FEDERATED FOODS, INC., d.b.a. Hy-Top Products Division, Appellant,

v.

FORT HOWARD PAPER COMPANY, Appellee.

Patent Appeal No. 76–624.

United States Court of Customs and Patent Appeals.

Nov. 24, 1976.

Richard Bushnell of Olson, Trexler, Wolters, Bushnell & Fosse, Ltd., Chicago, Ill., attorney of record, for appellant.

Chester L. Davis, Jr. of Barnes, Kisselle, Raisch & Choate, Detroit, Mich., attorney of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (TTAB) of the Patent and Trademark Office (PTO), 189 USPQ 310 (1975), sustaining appellee's opposition to the registration of the woodmark HY–TOP for sanitary paper products, aluminum foil, plastic bags, and sponges, as described in application Serial No. 395,671, filed June 24, 1971. Familiarity with the opinion below is assumed. We affirm in part and reverse in part.

Appellant filed a "combined" application seeking to register HY–TOP for a full line of grocery store goods falling within eleven different classes. The same mark had previously been registered for canned vegetables.[1] Appellant, a brokerage firm which has developed several private brand programs for supermarket goods, supplies marked labels and quality standards to manufacturers and acts as an agent in arranging the sale of the marked goods to regional grocery distributors. Products

1. Registration No. 754,306, August 6, 1963.

bearing some of appellant's other brands go to both institutional and retail distributors, but HY–TOP products are intended exclusively for retail sale.

Appellee, a large manufacturer of sanitary paper products (facial and toilet tissue, paper towels, napkins, etc.), sells its products under a number of trademarks primarily to institutional suppliers. Ten percent of opposer's sales of sanitary paper products are to retail outlets. Opposer owns the registered trademarks HY–TEX for toilet tissue [2] and HYNAP for paper napkins,[3] but goods so marked are sold, at present, only to institutional suppliers.

The testimony taken by both parties indicates, inter alia, that distributors of sanitary paper products might also carry plastic bags, aluminum foil, and sponges, and that all of these goods might be found in the same area of a supermarket. The record also indicates that appellant distributed various products other than canned vegetables under HY–TOP labels bearing the ® mark, allegedly due to mistaken notions as to the scope of the rights attaching to the prior registration.

Appellee did not oppose the previous HY–TOP registration and chose to oppose the instant registration only as to four of the classes of goods in the combined application, namely: plastic bags (class 2), aluminum foil (class 14), sponges (class 29), and facial tissue, napkins, paper towels, plastic wrap, and toilet tissue (class 37). It was alleged that HY–TOP so resembles opposer's registered trademarks HY–TEX and HYNAP as to be likely, when applied to the above-noted four classes of goods, to cause confusion, or to cause mistake, or to deceive, and that registration should, therefore, be denied under § 2(d) of the Trade-

mark Act of 1946 (15 U.S.C. § 1052(d)).[4] Opposer's priority of use and registration are uncontested.

## OPINION

The TTAB, in sustaining the opposition, dealt primarily with four issues:

(1) Whether opposer can be further damaged by registration of HY–TOP in view of appellant's legitimate use of the mark on a large number of grocery products and appellee's election not to oppose other registrations of the mark;

(2) Whether appellant's alleged misuse of the statutory notice provided for in § 29 of the Trademark Act of 1946 (15 U.S.C. § 1111), namely, ®, bars registration to it of HY–TOP.

(3) Whether HY–TOP so resembles opposer's HYNAP mark for paper napkins as to be likely, when applied to the goods of appellant, to cause confusion, or to cause mistake, or to deceive (§ 2(d)); and

(4) Whether HY–TOP so resembles opposer's HY–TEX mark for toilet tissue as to be similarly objectionable under § 2(d).

In view of the detailed treatment of these issues by the TTAB, we shall only summarily treat its sustainable conclusions.

■■■ Having carefully considered appellant's arguments with respect to the first issue, we conclude that the TTAB correctly held that opposer was not barred by acquiescence from opposing the instant registration in view of the substantial differences between the instant goods and the goods described in the unopposed applications. Appellant now argues that opposer, although not barred, has, nonetheless, failed to *prove* that it may be "damaged." Actual "damage" is not mentioned in § 2(d) and is

---

2. Registration No. 310,364, February 20, 1934.

3. Registration No. 616,574, November 22, 1955.

4. Sec. 2(d) reads in pertinent part:
No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

* * * * * *
(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * *.

neither a requirement for, nor a guarantee of, a successful opposition on the merits. *American Novawood Corp. v. United States Plywood-Champion Papers Inc.*, 57 CCPA 1276, 426 F.2d 823, 165 USPQ 613 (1970). Since the concept of "damage" is involved here only because of its mention in § 13 of the Trademark Act of 1946 (15 U.S.C. § 1063), which provides that "Any person who believes that he would be damaged by the registration of a mark upon the principal register" may oppose, we construe appellant's argument as an allegation that opposer has not demonstrated its standing to oppose. We must reject this contention. A party has standing to oppose within the meaning of § 13 if that party can demonstrate a *real interest* in the proceeding. *Universal Oil Products Co. v. Rexall Drug and Chemical Co.*, 59 CCPA 1120, 463 F.2d 1122, 174 USPQ 458 (1972). The record shows that opposer is the owner of registered trademarks similar to appellant's HY–TOP for goods identical to some of those described in appellant's application. Opposer's real commercial interest in protecting its registered marks is manifest and, in our opinion, justifies opposer's belief that it would be "damaged" by the registration.[5]

■ As to the second issue, the alleged misuse of ®, we agree with the reasoning and conclusion of the TTAB that the evidence of record does not reveal an intentionally deceptive misuse which would, by itself, justify denial of appellant's registration. We see no reason to remand for a factual determination that the improper use of ® has stopped, as opposer would have us do, in view of the testimony of appellant's witness exactly to that effect.

■ We are also in agreement with the decision of the TTAB with respect to the third issue, under § 2(d), that HYNAP and HY–TOP, having different visual, aural, and suggestive impressions, would not be likely, even if applied to *identical goods*, to cause confusion, or to cause mistake, or to deceive. Opposer does not strenuously argue the likelihood of confusion with respect to its HYNAP mark here on appeal, and we see no reason to discuss this issue further.

■ However, as to the fourth issue, § 2(d) based on HY–TEX, we are not in complete agreement with the TTAB. We do agree with its analysis concluding that since the descriptions of the goods of the parties are not limited "as to trade channels and/or classes of purchasers," and since all of the goods could and do move through similar trade channels to both institutional and retail customers, the goods of the parties should be presumed, for purposes of this proceeding, to move through the same channels of trade. We also agree with the TTAB's conclusions that the paper products of the parties are substantially identical and that the marks must be compared in their entireties. We cannot, however, agree with the conclusion that confusion between the HY–TEX and HY–TOP marks would be likely with respect to *all* of the opposed classes of goods.

■ The instant opposition is to the registration of a mark in a *combined application*; that is, a single application to register the mark for goods falling within a plurality of classes, as provided by § 30 of the Trademark Act of 1946 (15 U.S.C. § 1112)[6] and 37 CFR 2.86 and 2.87.[7] The

---

5. If appellant is arguing that opposer has failed to prove that it has been "legally damaged" and, therefore, cannot prevail on the merits of the § 2(d) claim, the answer is that "legal damage" will be *presumed* if opposer can show that confusion would be likely. See *Massey Junior College v. Fashion Institute of Technology*, 492 F.2d 1399, 181 USPQ 272 (Cust. & Pat.App. 1974) and cases cited therein at note 4.

6. Sec. 30 reads in pertinent part:

The applicant may file an application to register a mark for any or all of the goods and services upon or in connection with which he is actually using the mark: *Provided*, That when such goods or services fall within a plurality of classes, a fee equalling the sum of the fees for filing an application in each class shall be paid, and the Commissioner may issue a single certificate of registration for such mark.

7. § 2.86 *Plurality of goods or services comprised in single class may be covered by single application.*

combined application is regarded by the PTO as though it were a group of individual applications which have been physically assembled in a single file wrapper and assigned a single serial number. Trademark Manual of Examining Procedure (TMEP) 1113.01. To file such an application, a separate fee must be paid for each class in which registration is sought.[8] Although treated as a unitary application for examination purposes (a delay in one class will delay the whole application), the combined application is freely severable to allow registration of the mark in unopposed classes. TMEP 1113.02, 1113.03. The severable nature of the combined application is manifest in the requirement of § 31 of the Trademark Act of 1946 (15 U.S.C. § 1113)[9] that a separate fee be paid for *each class opposed* in an opposition to the registration of a mark in a combined application. See *Colgate-Palmolive Co. v. Brenner*, 248 F.Supp. 378, 148 USPQ 535 (S.D.N.Y.1965). The TTAB has, itself, recognized that oppositions to combined applications require separate analyses for each class of goods opposed. *Frantz v. Sky Distributing Co.*, 169 USPQ 185, 189, and n. 3 (TTAB 1971). We conclude, therefore, that this opposition proceeding as to four classes of a combined application is, effectively, four different oppositions which require four different factual determinations and four different conclusions on the ultimate issue of likelihood of confusion under § 2(d). As noted by the TTAB in *Frantz*, these analyses must compare appellant's described goods in each opposed class to the goods of opposer, not with each other.

Doing so, we agree with the TTAB that HY–TOP so resembles HY–TEX in appearance, spelling, and sound, as to be likely, when applied to *identical* goods, to cause confusion, or to cause mistake, or to deceive, despite the differences in suggestive impression noted below.[10] We, therefore, affirm the decision of the TTAB sustaining the opposition to the registration of HY–TOP in class 37 since the paper products described in the application include toilet tissue, a product *identical* to the goods described in opposer's HY–TEX registration.

Considering appellant's other three classes of goods, there is no evidence that opposer makes or sells plastic bags, aluminum foil, or sponges. The only basis for the opposition is the HY–TEX registration, which is restricted to toilet tissue. What, then, is the evidence showing toilet tissue to be so related to plastic bags, aluminum foil, and sponges that confusion in trade would be likely, even if the goods were marketed under somewhat different marks? Appellant urges, we think correctly, that the only link opposer has established between these goods is that they might be expected to be found in the same area of a supermarket.[11]

A single application may recite a plurality of goods, or a plurality of services, comprised in a single class, provided the particular identification of each of the goods or services be stated and the mark has actually been used on or in connection with all of the goods or in connection with all of the services specified.

§ 2.87 *Combined applications.*

An application also may be filed to register the same mark for any or all of the goods and/or services upon or in connection with which the mark is actually used and which fall within a plurality of classes. However, dates of use for each class, five specimens for each class, and a fee equaling the sum of the fees for filing an application in each class are required. A single certificate of registration for the mark may be issued.

**8.** Section 30, note 6, supra.

**9.** Sec. 31 reads in pertinent part:

(a) The following fees shall be paid to the Patent and Trademark Office under this chapter:

\* \* \* \* \* \*

5. On filing opposition or application for cancellation for each class, $25.

**10.** Appellee contends that the marks convey the same suggestive impression because "surface" is a synonym for both "top" and "texture," thereby implying that "top" and "texture" are synonymous. We do not believe that the mathematical proposition that things equal to the same thing are equal to each other can be applied with confidence to a system as imprecise as language.

**11.** We are cognizant of the fact that the testimony indicated that all of the goods might also be carried by distributors, but, in our opinion,

We hold that this evidence is not sufficient to sustain the opposition in classes 2, 14, and 29.

A wide variety of products, not only from different manufacturers within an industry but also from diverse industries, have been brought .together in the modern supermarket for the convenience of the customer. The mere existence of such an environment should not foreclose further inquiry into the likelihood of confusion arising from the use of similar marks on *any* goods so displayed. See *Canada Dry Corp. v. American Home Products Corp.*, 468 F.2d 207, 175 USPQ 557 (Cust. & Pat.App.1972). The means of distribution and sale, although certainly relevant, are areas of peripheral inquiry. The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.

The class 2 goods, plastic bags, are products of the polymer processing industry. The class 29 goods, sponges, might be considered either products of the polymer industry or harvested products of nature. The class 14 product, aluminum foil, is obviously a product of the metal processing industry. Opposer's toilet tissue, on the other hand, is plainly a product of the paper-making industry. Nobody, during the course of this proceeding, has asserted that the utilities of opposer's toilet tissue and appellant's aluminum foil, plastic bags, and sponges are even remotely associated by the consumer, nor has it been asserted that,

under these circumstances, a consumer might pick up sponges or aluminum foil when he really wanted toilet tissue. Opposer has failed to adduce any evidence of a nexus between these products in the mind of the consumer which would negate the above-noted obvious dissimilarities. In our opinion, the cumulative differences between the respective goods and the respective marks are sufficient to preclude likelihood of confusion, mistake, or deception.

### Summary

The decision of the TTAB sustaining the opposition is *affirmed* with respect to class 37 and *reversed* with respect to classes 2, 14, and 29.

### MODIFIED

BALDWIN, J., dissents from the reversal.

MILLER, Judge (concurring).

I agree with everything in the majority opinion except the portion which speaks to the various industries which produce the different classes of goods here involved, a point which I consider irrelevant to the issue of likelihood of confusion in this case.

---

confusion between the marked goods would be even less likely at the distributor level than in the supermarket where the goods might actually be displayed in proximity.