Paper No. 16
CMB

THIS DISPOSITION IS CITABLE AS
PRECEDENT OF THE TTAB          AUG. 31, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Continental Graphics Corporation
_____

Serial No. 75/033,628
_____

Nanette M. Norton of Brinks Hofer Gilson & Lione for
Continental Graphics Corporation.[1]

Cynthia Tripi, Trademark Examining Attorney, Law Office 105
(Thomas G. Howell, Managing Attorney).
_____

Before Seeherman, Walters and Bottorff, Administrative
Trademark Judges.

Opinion by Bottorff, Administrative Trademark Judge:

In application Serial No. 75/033,628, applicant seeks

registration of the mark CONTINENTAL GRAPHICS for services

recited as "document reproduction services" in Class 35 and

"media duplication of data and digital information

---

[1] Tim C. Hale, of the firm of Russo & Hale LLP, prosecuted the
application on behalf of applicant and filed applicant's appeal
brief and reply brief.  Subsequent to the filing of the reply
brief, applicant filed a revocation of its previous power of
attorney and appointed Ms. Norton et al. of the firm of Brinks

services" in Class 42.  Applicant has disclaimed the exclusive right to use the word GRAPHICS apart from the mark as shown.

The Trademark Examining Attorney has refused registration of applicant's mark under Trademark Act Section 2(d), 15 U.S.C. §1052(d), on the ground that applicant's mark, as applied to applicant's services, so resembles the mark depicted below,

for services recited in the registration as "printing services," as to be likely to cause confusion, to cause mistake, or to deceive.[2]  When the refusal was made final, applicant appealed.  Applicant and the Trademark Examining Attorney have filed briefs, and applicant has filed a reply

---

Hofer Gilson & Lione as its attorneys of record for this application.
[2] Registration No. 1,355,921, issued August 20, 1985.  Affidavits under Section 8 and 15 accepted.  The registration contains the following disclaimer statement: "No claim is made to the exclusive right to use the representation of the globe apart from the mark as shown."  The registration also contains the following statement: "The mark consists, in part, of two fanciful representations of the letter "C".

brief.  No oral hearing was requested.  We affirm the refusal.

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue.  *See In re E.I. du Pont de Nemours and Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).  In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services.  *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

We turn first to a determination of whether applicant's mark and the registered mark, when viewed in their entireties, are similar in terms of appearance, sound, connotation and commercial impression.  The test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the services offered under the respective marks is likely to result.  The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks.  *See Sealed Air Corp. v.*

3

*Scott Paper Co.,* 190 USPQ 106 (TTAB 1975). Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See In re National Data Corp.,* 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).

Clearly, the word CONTINENTAL is the dominant feature in the commercial impressions created by each of the marks at issue in this appeal. The word GRAPHICS in applicant's mark is a generic and disclaimed term which contributes relatively little to the overall commercial impression created by applicant's mark. Likewise, it is the word CONTINENTAL, rather than the disclaimed globe design or the stylized letter "C", which dominates registrant's mark, inasmuch as it is the spoken portion of the mark, which would be used by purchasers to call for the services. *See In re Appetito Provisions Co.,* 3 USPQ2d 1553 (TTAB 1987). Indeed, the dominant role of the word CONTINENTAL in the overall commercial impression created by the registered mark is reinforced, rather than negated, by the inclusion in the mark of the globe design depicting stylized continents and the inclusion of the large letter "C", which

is the first letter of the word CONTINENTAL. *See In re Elco Corp.*, 180 USPQ 155 (TTAB 1973).

In short, we find that applicant's mark and the registered mark, when viewed in their entireties, are similar, and that this similarity supports a finding of likelihood of confusion in this case.

We turn next to a determination of whether applicant's "document reproduction" and/or "media duplication of data and digital information" services are sufficiently closely related to the "printing services" recited in registrant's registration that confusion would be likely to result from the use of the respective marks. In this regard, the Trademark Examining Attorney has made of record copies of over forty third-party registrations demonstrating that "printing services," on the one hand, and "document reproduction" and/or "media duplication" services, on the other, are commonly offered by a single source under a single mark. We find this evidence to be sufficient to establish that applicant's recited services and registrant's recited services are commercially related.

Applicant has not disputed or refuted the Trademark Examining Attorney's evidence. Instead, applicant has presented and relied on extrinsic evidence purporting to show that the registrant's "printing services" actually are

5

limited to the printing of business cards, that registrant's customers are limited to other commercial printers, rather than ultimate purchasers/users, and that registrant renders its services only in a limited geographic area. Citing *In re Trackmobile Inc.,* 15 USPQ2d 1152 (TTAB 1990), applicant argues that the Trademark Examining Attorney, in finding that applicant's services are related to the registrant's services, improperly ignored this extrinsic evidence regarding the nature of registrant's actual services, evidence which, according to applicant, demonstrates that applicant's services in fact are distinguishable from and unrelated to registrant's services.

Applicant's argument is without merit. *Trackmobile* does not stand for the proposition that when the goods or services identified in the cited registration are described broadly, the Board may or should consider extrinsic evidence as to the nature of the registrant's actual goods or services when making its likelihood of confusion determination.[3] Indeed, that proposition is directly

---

[3] In *Trackmobile*, a Section 2(d) refusal had been issued based on a registration in which the goods were identified as "light railway motor tractors." The applicant, in attempting to overcome the Section 2(d) refusal by demonstrating that its goods were unrelated to the goods identified in the cited registration, offered extrinsic evidence as to the nature of the registrant's goods, evidence which the Board considered.

contrary to the rule, expressly reiterated by the Board in *Trackmobile*, that the likelihood of confusion determination must be made on the basis of the goods or services as identified in the application and the registration, rather than on the basis of what the evidence might show the applicant's or registrant's actual goods or services to be. *See In re Trackmobile, supra*, 15 USPQ2d at 1153. *See also Canadian Imperial Bank of Commerce v. Wells Fargo Bank*, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987).

Thus, when the Board considered the applicant's extrinsic evidence regarding the registrant's goods in *Trackmobile*, it was not because the registrant's goods were identified broadly in the registration, but because the Board was uncertain as to what the goods identified in the registration were. That is, the Board did not consider the extrinsic evidence in order to determine the nature of the registrant's particular "light railway motor tractors," but rather to determine what "light railway motor tractors" were, in general.

In the present case, by contrast, no extrinsic evidence is necessary in order to educate the Board as to what "printing services" are; the term, although broad, is neither vague nor uncertain. Accordingly, applicant's reliance on *Trackmobile* is misplaced, and applicant's

proffered extrinsic evidence regarding the nature and scope of the services actually rendered by the registrant is irrelevant and can be given no consideration.

Likewise, we reject applicant's contentions that applicant's services move in different trade channels than registrant's services, and that applicant's purchasers are sophisticated. Because no trade channel limitations have been included in either applicant's recitation of services nor in the registration's recitation of services, we must presume that applicant and registrant are entitled to offer their services in all normal trade channels for such services, and to all normal classes of customers for such services. *See In re Elbaum*, 211 USPQ 639 (TTAB 1981). Furthermore, nothing in this record persuades us that purchasers of the types of services recited in the application and in the registration are necessarily sophisticated purchasers who would be immune to source confusion when faced with the similar marks and related services involved in this case. *See Refreshment Machinery Incorporated v. Reed Industries, Inc.*, 196 USPQ 840 (TTAB 1977).

Finally, applicant's assertion that it is unaware of any instances of actual confusion despite over eighteen years of concurrent use of the marks by applicant and

registrant does not persuade us that no likelihood of confusion exists in this case. We cannot determine on this record that there has been any meaningful opportunity for actual confusion to have occurred in the marketplace, and accordingly we cannot conclude that the alleged absence of actual confusion is entitled to significant weight in our likelihood of confusion analysis in this case. *See Gillette Canada Inc. v. Ranir Corp.*, 23 USPQ2d 1768 (TTAB 1992).

For the reasons discussed above, we conclude that confusion is likely in this case, and that the Trademark Examining Attorney's Section 2(d) refusal was proper.

Decision: The refusal to register is affirmed.


E. J. Seeherman

C. E. Walters

C. M. Bottorff

Administrative Trademark Judges
Trademark Trial and Appeal Board