```
THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB
```

Mailed:
June 21, 2005

Grendel

# UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

Knight Textile Corporation
v.
Jones Investment Co., Inc.

————

Opposition No. 91153852
to application Serial No. 76070279
filed on June 14, 2000

————

Bernard R. Gans of Jeffer, Mangels, Butler & Marmaro LLP for
Knight Textile Corporation.

Robert L. Sherman of Paul, Hastings, Janofsky & Walker LLP
for Jones Investment Co., Inc.

————

Before Quinn, Grendel and Kuhlke, Administrative Trademark
Judges.

Opinion by Grendel, Administrative Trademark Judge:

Applicant, Jones Investment Co., Inc.,[1] seeks

registration on the Principal Register of the mark NORTON

MCNAUGHTON ESSENTIALS (in standard character form) for goods

---

[1] The application involved in this opposition proceeding was
originally filed by Norton McNaughton of Squire, Inc.  The
Office's assignment records show that Jones Investment Co., Inc.
is the current owner of the application, by mesne assignments
culminating in an assignment recorded on December 31, 2002 at
Reel 2651, Frame 0980.  Accordingly, we hereby substitute Jones
Investment Co., Inc. as party defendant herein.

identified in the application as "ladies' sportswear, namely, shirts, shorts, pants, jumpers, dresses, skirts, jackets, blouses and vests" in Class 25.[2]

Opposer, Knight Textile Corporation, has opposed registration on the ground that applicant's mark, as applied to the goods identified in the application, so resembles opposer's mark ESSENTIALS, previously registered by opposer (in standard character form) for "women's clothing, namely pants, blouses, shorts, and jackets for women" in Class 25,[3] as to be likely to cause confusion, to cause mistake, or to deceive. Trademark Act Section 2(d), 15 U.S.C. §1052(d).[4] Applicant filed an answer by which it denied the salient allegations of the notice of opposition.

Both parties submitted evidence at trial via notice of reliance. The case has been fully briefed, but no oral hearing was requested.

---

[2] The application was filed on June 14, 2000 on the basis of applicant's asserted bona fide intention to use the mark in commerce. Applicant subsequently filed an Amendment to Allege Use, in which December 25, 2000 is alleged as the date of first use of the mark anywhere and the date of first use of the mark in commerce. The application file includes applicant's statement that "NORTON MCNAUGHTON is not the name of a living individual."

[3] Registration No. 1440036, issued May 19, 1987. Affidavits under Trademark Act Sections 8 and 15 accepted and acknowledged.

[4] Opposer's notice of opposition also includes (at paragraph 4) an allegation of dilution. However, opposer has not presented any argument in its briefs in support of this pleaded ground, and therefore is deemed to have waived it.

The evidence of record consists of (a) the pleadings herein; (b) the file of the opposed application;[5] (c) opposer's notice of reliance on status and title copies of opposer's pleaded registration, which show that the registration is extant and owned by opposer; and (d) applicant's notice of reliance on status and title copies of twenty-three third-party registrations (owned by twenty-one different owners) of marks which include the word ESSENTIALS for clothing items in Class 25, including women's clothing items. These third-party marks are: JONES NEW YORK ESSENTIALS (NEW YORK disclaimed),[6] SAKS JANDEL ESSENTIALS, MODERN ESSENTIALS, EASY ESSENTIALS, BASIC ESSENTIALS, APOSTROPHE ESSENTIALS, ISLAND ESSENTIALS, UNNECESSARY ESSENTIALS, LIVING ESSENTIALS, BEVERLY HILLS ESSENTIALS (BEVERLY HILLS disclaimed), BIO ESSENTIALS and design, DIANE'S ESSENTIALS, COTTON ESSENTIALS (COTTON disclaimed), AVENUE ESSENTIALS, SOFT ESSENTIALS (SOFT disclaimed), FOREST ESSENTIALS, SPA ESSENTIALS, CABIN ESSENTIALS, KNIT

---

[5] However, the allegations made in the application, and the specimens, documents, exhibits, etc., filed in the application, are not evidence on behalf of applicant in this opposition proceeding, because they were not properly made of record at trial. *See* Trademark Rule 2.122(b); TBMP §704.03(a) (2d ed. rev. 2004). This includes the NEXIS electronic database evidence regarding the use and significance of the term "essentials" in the clothing field. We have given these materials no consideration in reaching our decision herein, and we note that applicant has not cited to or relied on them in its brief on the case.

[6] Reg. No. 2547457, owned by Jones Investment Co., Inc., which appears to be defendant herein.

ESSENTIALS and design (KNIT disclaimed), JUTE ESSENTIALS (JUTE disclaimed), ACTIVE ESSENTIALS (ACTIVE disclaimed), CAREER ESSENTIALS and AMERICAN ESSENTIALS (AMERICAN disclaimed).

Because opposer has made status and title copies of its pleaded registration of record, we find that opposer has established its standing to oppose. *See Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982). Additionally, because opposer's pleaded registration is of record, priority is not an issue in this case. *See King Candy Co., Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). Thus, the only issue remaining to be determined is opposer's likelihood of confusion claim.

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours and Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

4

We find that applicant's goods, as identified in the application, are in part identical to and otherwise highly similar to the goods identified in opposer's pleaded registration. We also find that the parties' respective goods are marketed in the same trade channels and to the same classes of purchasers, i.e., in all normal trade channels and to all normal classes of purchasers for such goods. We find that there is no evidence in the record showing any third-party use of similar marks on similar goods; the third-party registrations made of record by applicant are not evidence, under the sixth *du Pont* factor ("the number and nature of similar marks in use on similar goods"), that the marks depicted therein are in use or that they are familiar to purchasers. *See Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992). The evidence (or lack thereof) pertaining to these *du Pont* factors weighs in opposer's favor in our likelihood of confusion analysis.

Turning finally to the first *du Pont* factor, however, we find that the parties' marks are dissimilar rather than similar when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression. The marks obviously are similar in terms of sight, sound and meaning to the extent that they both consist of or include the word ESSENTIALS. Just as

5

obviously, the marks are dissimilar in terms of sight, sound and meaning to the extent that applicant's mark, but not opposer's, includes and begins with the words NORTON MCNAUGHTON, which would be perceived to be applicant's house mark.  In terms of overall commercial impression, we find that although the word ESSENTIALS is the entirety of the commercial impression created by opposer's mark, in applicant's mark it contributes relatively less to the mark's commercial impression than does the house mark NORTON MCNAUGHTON.  This is because, as discussed more fully *infra*, we find that the word ESSENTIALS is highly suggestive as applied to the parties' clothing items and as it appears in both parties' marks, especially in applicant's mark.  *See In re National Data Corporation*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).

The basic issue presented in this case is whether applicant's coupling of the term ESSENTIALS with its house mark NORTON MCNAUGHTON suffices to avoid likelihood of confusion between the applicant's mark and opposer's mark ESSENTIALS.  We find that it does.

In *New England Fish Company v. The Hervin Company*, 511 F.2d 562, 184 USPQ 817 (CCPA 1975), the Court stated as follows:

> … there is no arbitrary rule of law that if two
> product marks are confusingly similar,
> likelihood of confusion is not removed by use of

6

> a company or housemark in association with the
> product mark. Rather, each case requires a
> consideration of the effect of the entire mark
> including any term in addition to that which
> closely resembles the opposing mark. Rockwood
> Chocolate Co. v. Hoffman Candy Co., 54 CCPA
> 1061, 372 F.2d 552, 152 USAPQ 599 (1967).

184 USPQ at 819. The Court was affirming on appeal a
decision of the Board's in which the Board, also citing to
and quoting from *Rockwood Chocolate Co., Inc. v. Hoffman
Candy Company*, noted:

> There are decisions which have held that the
> addition of a housemark or a surname to one of
> two otherwise similar marks may not be of itself
> sufficient to avoid a likelihood of confusion in
> trade; but "… each case requires consideration
> of the effect of the entire mark including any
> term in addition to that which closely resembles
> the opposing mark." See: Rockwood Chocolate
> Co., Inc. v. Hoffman Candy Company, 152 USPQ 599
> (CCPA 1967). In accordance with the reasoning
> in this decision, the Court of Customs and
> Patent Appeals and this Board have held that,
> where a party is seeking to register a composite
> mark consisting of a product mark in association
> with a housemark or a surname and registration
> is opposed by a prior user of a mark alleged to
> be similar to the said product mark and there
> are some recognizable differences in the
> asserted conflicting product marks or the
> product marks in question are highly suggestive
> or play upon commonly used or registered terms,
> the addition to applicant's mark of the
> housemark was sufficient to render the marks as
> a whole registrably distinguishable. [Citations
> omitted.]

179 USPQ 743, 746 (TTAB 1973).

In the present case, there are no recognizable
differences between the product mark portions of the party's

respective marks, i.e., ESSENTIALS.  However, we find that ESSENTIALS is a highly suggestive term as applied to the articles of clothing identified in applicant's application and in opposer's registration, respectively, and that, under our case law, applicant's addition of its house mark therefore suffices to distinguish the two marks when they are viewed in their entireties.

We take judicial notice that "essential-s," as a noun, is defined as "something basic or fundamental esp. belonging to or forming part of the minimal indispensable body, character, or structure of a thing."  Webster's Third New International Dictionary (1993) at 777.  In both parties' marks, the "thing" mentioned in this definition would be one's wardrobe; ESSENTIALS connotes that the clothing items sold under the marks are basic and indispensable components of, or "essentials" of, one's wardrobe.  We find this term to be highly suggestive of the goods.

This highly suggestive significance of the term is corroborated by the third-party registrations of ESSENTIALS marks that applicant has made of record.  As noted above, these third-party registrations are not evidence, under the sixth du Pont factor, that the registered marks actually are in use or known to purchasers.  Nonetheless, the registrations "may be given some weight to show the meaning of a mark in the same way that dictionaries are used."

8

*Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693, 694-95 (CCPA 1976), *aff'g* 187 USPQ 588 (TTAB 1975). *See also Conde Nast Publications, Inc. v. Miss Quality, Inc.*, 597 F.2d 1404, 1406-07, 184 USPQ 422, 424-25 (CCPA 1975). In *Red Carpet Corp. v. Johnstown American Enterprises Inc.*, 7 USPQ2d 1404 (TTAB 1988), the Board explained that such third-party registrations are

> competent to establish that a portion common to the marks involved in a proceeding has a normally understood and well-known meaning; that this has been recognized by the Patent and Trademark Office by registering marks containing such a common feature for the same or closely related goods where the remaining portions of the marks are sufficient to distinguish the marks as a whole; and that therefore the inclusion of [the common element] in each mark may be an insufficient basis on which to predicate a holding of confusing similarity.

7 USPQ2d at 1406.

The third-party registrations applicant has made of record corroborate the dictionary definition of "essentials" referred to above. The registrations show that others in the field have considered the word ESSENTIALS to have suggestive significance as applied to clothing, i.e., that the clothing items identified in the registrations are to be viewed by purchasers as wardrobe "essentials." The registrations also show that the Office has recognized that ESSENTIALS has such suggestive significance as applied to items of apparel. There are twenty-three extant ESSENTIALS

9

registrations on the register in the clothing field, registered to twenty-one different owners.

Based on this evidence, we find that purchasers are able to distinguish among various ESSENTIALS marks by looking to other elements of the marks. In this case, that other element is the presence of applicant's house mark NORTON MCNAUGHTON.[7] We find that ESSENTIALS is a highly suggestive term as applied to clothing, and that applicant's addition of its house mark NORTON MCNAUGHTON renders the two marks sufficiently distinguishable, when viewed in their entireties, that confusion is not likely to occur. *See New England Fish Company v. The Hervin Company, supra;* and *Kayser-Roth Corporation v. Morris & Company, Inc*., 164 USPQ 153 (TTAB 1969)(PAUL JONES ESQUIRE and ESQUIRE not likely to be confused as applied to men's clothing). Purchasers who encounter the word ESSENTIALS in applicant's mark are likely to attribute to it its highly suggestive meaning, i.e., that the goods are "essentials" for one's wardrobe. They are not likely to mistakenly assume that applicant's goods bear any source or other relationship to opposer or to opposer's ESSENTIALS-branded goods. *See Conde Nast Publications, Inc. v. Miss Quality, Inc*., *supra* (COUNTRY VOGUES for dresses not

---

[7] At least two of the third-party registrations applicant has made of record are of marks which are comprised of the word ESSENTIALS coupled with apparent house marks, i.e., SAKS JANDEL ESSENTIALS and JONES NEW YORK ESSENTIALS, the latter of which appears to be owned by the applicant herein.

10

likely to be confused with VOGUE for magazines; purchasers likely to view VOGUES in its normal suggestive sense as applied to such goods).

Having considered the evidence of record as it pertains to the relevant *du Pont* factors, we find that confusion is unlikely to result from contemporaneous use of opposer's ESSENTIALS mark and applicant's NORTON MCNAUGHTON ESSENTIALS mark, even where the marks are used on identical goods marketed in the same trade channels and to the same classes of purchasers. We find that the dissimilarity of the marks, under the first *du Pont* factor, simply outweighs the evidence as to the other factors which favor opposer's case. *See, e.g., Kellogg Co. v. Pack-Em Enterprises Inc.*, 14 USPQ2d 1545 (TTAB 1889), *aff'd*, 951 F.2d 330, 21 USPQ2d 1142 (Fed. Cir. 1991).

**Decision**: The opposition is dismissed.