THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.

Mailed:
May 8, 2009
jtw

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Cynosure, Inc.

_____

Serial No. 76653359

_____

John P. Iwanicki of Banner & Witcoff, Ltd. for Cynosure, Inc.

Barbara A. Gaynor, Trademark Examining Attorney, Law Office 115 (Tomas V. Vlcek, Managing Attorney).

_____

Before Grendel, Walsh and Ritchie, Administrative Trademark Judges.

Opinion by Walsh, Administrative Trademark Judge:

Cynosure, Inc. (applicant) has applied to register the mark CYNERGY in standard characters on the Principal Register for goods identified as "medical lasers for the cosmetic and medical treatment of the face and skin, and vascular treatment, sold directly to licensed medical practitioners" in International Class 10.[1]

---

[1] Application Serial No. 76653359, filed January 11, 2006, claiming first use of the mark anywhere and first use of the mark in commerce on March 7, 2005.

The Examining Attorney has issued a final refusal under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), on the grounds that applicant's mark is likely to be confused with the mark SYNERGIE PEEL, which is registered on the Principal Register in typed form in Registration No. 2678708 for goods identified as "medical devices used for microdermabrasion" in International Class 10. The registration issued on January 21, 2003, and it is active. The registration claims first use of the mark anywhere and first use of the mark in commerce on January 18, 2001. The registration includes the following statement: "The English translation of 'SYNERGIE' is 'synergy.'" The registration also includes a disclaimer of PEEL.

Applicant has appealed. Applicant and the Examining Attorney have filed briefs. We affirm.

Section 2(d) of the Trademark Act precludes registration of an applicant's mark "which so resembles a mark registered in the Patent and Trademark Office… as to be likely, when used on or in connection with the goods of the applicant, to cause confusion…" 15 U.S.C. § 1052(d). The opinion in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1977), sets forth the factors to consider in determining likelihood of confusion. Here, as is often the case, the crucial factors are the

similarity of the marks and the similarity of the goods in the application and the cited registration. *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). We will consider each of the factors as to which applicant or the examining attorney has presented evidence or arguments.

We will address the marks first. In comparing the marks we must consider the appearance, sound, connotation and commercial impression of the marks at issue. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005).

Also, "… it is well established that the test to be applied in determining likelihood of confusion is not whether marks are distinguishable on the basis of a side-by-side comparison but rather whether they so resemble one another as to be likely to cause confusion, and this necessarily requires us to consider the fallibility of memory over a period of time. That is to say, the emphasis must be on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks." *Sealed Air Corp. v. Scott Paper*

3

*Co.*, 190 USPQ 106, 108 (TTAB 1975) (internal citations omitted).

Applicant argues that the Examining Attorney failed to consider the marks in their entireties by ignoring the disclaimed term "PEEL" in the cited mark. Applicant argues further that when the marks are considered in their entireties, there are significant differences in appearance, sound and connotation. Applicant emphasizes the differences in appearance and sound based on the different number of letters in the respective marks, and the difference in the first letter.

Applicant also asserts that its customers' familiarity with its corporate name and other registered marks, CYNOSURE and CYNOSURESPA, which share the same first three letters, will influence the perception of its CYNERGY mark, in particular, the connotation and sound. Applicant suggests that the three marks form a "family of marks." Applicant's Brief at 9. Based on the existence of a family of marks, applicant argues that customers familiar with its other marks will pronounce the first "Y" in CYNERGY like a long "I" in contrast to the likely pronunciation of the "Y" in the cited mark as a soft "I."

The Examining Attorney agrees that the marks must be viewed in their entireties but argues that greater weight

must be given to SYNERGIE in the cited mark because the disclaimed term "PEEL" is merely descriptive. The Examining Attorney also argues that SYNERGIE and CYNERGY are phonetic equivalents and that they are also the most important elements in the respective marks because SYNERGIE is the first element in the cited mark and CYNERGY is the only element in applicant's mark.

We reject applicant's family of marks argument. In an ex parte appeal, the focus of the likelihood-of-confusion analysis must be the mark applicant seeks to register, not other marks applicant may have used or registered. In other words, a family-of-marks argument is not available to an applicant seeking to overcome a likelihood-of-confusion refusal. *In re Lar Mor International, Inc.*, 221 USPQ 180 (TTAB 1983) ("In reaching the conclusion of no likelihood of confusion, we have given no weight to applicant's argument … that it owns a family of French-word marks all beginning with the word 'TRES'…."); *In re Ald, Inc.*, 148 USPQ 520, 521 (TTAB 1965) ("Likewise, in view of the specific prohibition of Section 2(d) of the Statute, the fact that applicant may possess a 'family' of marks characterized by the term 'ALD' is of no particular significance herein if the mark for which applicant now seeks registration, 'ALDPRESS', when considered in its

entirety, is confusingly similar to the previously registered mark 'ALLPREST'." (footnote omitted)).[2] *See also In re U.S. Plywood-Champion Papers, Inc.*, 175 USPQ 445, 446 (TTAB 1972) ("Applicant's ownership and registration of marks other than the mark sought to be registered herein is immaterial and irrelevant to the specific issue before us, and cannot justify the registration of what could be a confusingly similar mark." (citations omitted)).

Turning to the comparison of the marks at issue here, we concur with the Examining Attorney and conclude that the marks are similar. While there are specific differences between the marks, we find that the points of similarity are more significant. We, of course, recognize that we must view the marks in their entireties, and we have. We find that SYNERGIE is the dominant element in the cited mark, and that it is highly similar to CYNERGY, the only element in applicant's mark.

As the Court of Appeals for the Federal Circuit observed, "… in articulating reasons for reaching a

---

[2] In an inter partes case a plaintiff may assert a family of marks by showing that the marks containing the family feature have been used and promoted together in such a manner as to create public recognition and that the family feature is distinctive. *See Marion Laboratories Inc. v. Biochemical/Diagnostics Inc.*, 6 USPQ2d 1215 (TTAB 1988) and *Baroid Drilling Fluids Inc. v. Sun Drilling Products*, 24 USPQ2d 1048, 1052-1053 (TTAB 1992) (Board denies applicant/defendant attempt to assert family-of-marks argument).

conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties.  Indeed, this type of analysis appears to be unavoidable." *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).  Thus, we consider the disclaimed, descriptive term "PEEL" in the cited mark insufficient to distinguish the marks.

Also, CYNERGY and SYNERGIE are highly similar, if not identical, phonetic equivalents.  We find applicant's arguments to the contrary unpersuasive, including the argument that the first "Y" in CYNERGY will be pronounced as a long "I".  Furthermore, it is significant that both marks begin with words which are phonetic equivalents. *Presto Products, Inc. v. Nice-Pak Products Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988)("… [it is] a matter of some importance since it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered.").  We also find applicant's arguments that the marks differ in connotation and commercial impression

unpersuasive. Both marks connote "synergy," and "synergy" likewise dominates the commercial impression of both marks.

Accordingly, we conclude that the marks are similar.

Next, we consider whether the goods of the parties are related. The goods in the application and the cited registration need not be identical to find a likelihood of confusion under Trademark Act Section 2(d). They need only be related in such a way that the circumstances surrounding their marketing would result in relevant consumers mistakenly believing that the goods originate from or are associated with the same source. *On-Line Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re International Telephone & Telegraph Corp.*, 197 USPQ 910, 911 (TTAB 1978).

The proper inquiry is not whether the goods could be confused, but whether the source of the goods is likely to be confused. *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993).

Applicant identifies its goods as "medical lasers for the cosmetic and medical treatment of the face and skin, and vascular treatment, sold directly to licensed medical practitioners" in International Class 10; the goods identified in the cited registration are "medical devices used for microdermabrasion" in International Class 10.

Applicant's arguments, which we will address below, focus principally on the channels of trade and sophistication of purchasers, rather than the relationship between the respective goods as such.

The Examining Attorney argues that both the application and the cited registration identify devices for performing cosmetic procedures. In particular, the Examining Attorney argues that both devices can be used to remove dead skin cells.

In the evidence the Examining Attorney provided, we note the following description of microdermabrasion: "The principle of microdermabrasion is to remove surface dead cells from the skin, bring forward plump, fresh, healthy cells in conjunction with collagen and elastin tissue." See attachment to final Office action, dated June 26, 2008, from drstooman.com. The evidence also shows that this process is used, among other purposes, to diminish lines, age spots and acne scars. *Id.* from speirsclinic.com. Microdermabrasion devices spray abrasive crystals and use suction in this process. *Id.*

Laser devices are used to treat these same conditions, for example, acne scars, as well as for other purposes. We recognize, as applicant argues, that the respective devices employ different technology and that applicant's device can

9

be used for a wider variety of conditions, as the identification of goods indicates.

The Examining Attorney has also provided numerous examples of facilities, spas and clinics, which offer both microdermabrasion and laser procedures. See, e.g., *Id.* from advancedlaserskin.com, speirsclinic.com, drstolman.com, lasercosmetics.com, lalasercenter.com, and lookgood90210.com.

Thus, the evidence shows that the goods in the application and the goods in the cited registration are used for overlapping purposes and that they are purchased by the same entities for use in the same facilities. Accordingly, we conclude that the respective goods are related. Applicant does not directly dispute these facts.

As we noted, applicant rests its arguments with regard to the goods principally on the restricted channels of trade for its goods, as specified in the identification of goods, and most emphatically on the sophistication of the purchasers of its goods, as well as the goods identified in the cited registration.

The identification of goods in the application specifies that applicant's goods are "… sold directly to licensed medical practitioners." Applicant argues, "These lasers are FDA-approved medical devices and are not

available except to doctors and medical practitioners. These doctors are sophisticated purchasers who are careful about the product and the brand they purchase." Applicant's Brief at 3. Applicant also indicates that its lasers range in cost from $90,000 to $170,000. Although the identification of goods does not explicitly specify so, applicant also argues that it sells its lasers through a direct sales force which also assists purchasers with installation and training. Even in the absence of evidence on this specific point, we would conclude that this is true based on the identification of goods and other relevant evidence of record.

Applicant also asserts that the goods identified in the cited registration typically cost between $8,000 and $15,000. Applicant also states that persons who use these devices must be trained and certified to do so. Although applicant has not provided evidence to support its assertions with regard to the cost and circumstances surrounding the use of the devices identified in the registration, here also we would conclude based on the identification of goods and other relevant evidence of record that the general circumstances applicant posits would apply to the goods as identified in the cited registration.

While we acknowledge that the goods in question, both applicant's goods and those identified in the cited registration, are relatively complex and expensive and that the potential purchasers are relatively sophisticated in their fields, we conclude that the level of care which would attend the purchases is not sufficient to preclude a likelihood of confusion under the totality of the circumstances in this case. The Board has stated, "Even technically trained purchasers who are extremely familiar with expensive machinery may be confused when similar marks are used with respect to the same goods. *See Wm. K. Stamets Company v. The Metal Products Company,* 176 USPQ 92 (TTAB 1972)." *In re N.A.D. Inc.*, 221 USPQ 1115, 1118 (TTAB 1984). *See also In re Research and Trading Corp.*, 793 F.2d 1276, 230 USPQ 49, 50 (Fed. Cir. 1986).

In conclusion, after considering all evidence and arguments bearing on the *du Pont* factors, including those not specifically discussed here, we conclude that there is a likelihood of confusion between applicant's CYNERGY mark when used in connection with "medical lasers for the cosmetic and medical treatment of the face and skin, and vascular treatment, sold directly to licensed medical practitioners" and the cited SYNERGIE PEEL mark when used

12

in connection with "medical devices used for microdermabrasion."

Lastly, we note that we must resolve any doubt with regard to a determination under Trademark Act Section 2(d) in favor the owner of the cited, prior registration. *See In re The United States Shoe Corporation*, 229 USPQ 707, 709 (TTAB 1985); *In re Martin's Famous Pastry Shoppe, Inc.*, 221 USPQ 364, 367 (TTAB 1984); *In re Apparel, Inc.,* 578 F.2d 308, 151 USPQ 353 (CCPA 1966).

**Decision**: We affirm the refusal under Trademark Act Section 2(d).