THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.

Mailed:
June 16, 2010
jtw

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Princeton Tectonics, Inc.

————

Serial No. 77436425

————

George A. Smith, Jr. of Howson & Howson LLP for Princeton Tectonics, Inc.

Jennifer M. Hetu, Trademark Examining Attorney, Law Office 108 (Andrew Lawrence, Managing Attorney).

————

Before Bucher, Zervas and Walsh, Administrative Trademark Judges.

Opinion by Walsh, Administrative Trademark Judge:

Princeton Tectonics, Inc. (applicant) has applied to register the mark EPIC in standard characters on the Principal Register for goods now identified as "personal headlamps" in International Class 11. Applicant filed the application on April 1, 2008, and based the application on its statement of a bona fide intention to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b).

The Examining Attorney has issued a final refusal under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), on the grounds that applicant's mark is likely to be confused with the mark in Registration No. 0932375, EPIC in standard characters, registered on the Principal Register for goods identified as "electric lighting fixtures" in International Class 11. The registration issued on June 20, 2006.

Applicant has appealed. Applicant and the Examining Attorney have filed briefs. We reverse.

Section 2(d) of the Trademark Act precludes registration of an applicant's mark "which so resembles a mark registered in the Patent and Trademark Office… as to be likely, when used on or in connection with the goods of the applicant, to cause confusion…." 15 U.S.C. § 1052(d). The opinion in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1977) sets forth the factors to consider in determining likelihood of confusion. Here, as is often the case, the crucial factors are the similarity of the marks and the similarity of the goods identified in the application and the cited registration. *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976)("The fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of

differences in the essential characteristics of the goods and differences in the marks.").

The marks are identical. The Examining Attorney states, "Applicant alleges that 'EPIC' is a weak mark" and addresses that contention at some length. In fact, applicant merely makes a passing reference stating that EPIC is "a relatively weak mark" without offering any evidence or further argument on the point. Applicant's Brief at 10. The simple fact is that the marks are identical and that we have no basis to find that EPIC is a weak mark. Accordingly, we conclude that EPIC is a mark of ordinary strength entitled to all protections accorded to marks registered on the Principal Register consistent with Trademark Act Section 7(b), 15 U.S.C. § 1057(b).

In fact, the only *du Pont* factor at issue in this appeal is whether or not the goods identified in the application are related to the goods identified in the cited registration such that confusion is likely. The goods of applicant and the registrant need not be identical to find a likelihood of confusion under Section 2(d). They need only be related in such a way that the circumstances surrounding their marketing would result in relevant purchasers mistakenly believing that the goods originate from the same source. *On-Line Careline Inc. v. America*

Serial No. 77436425

*Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000).

Furthermore, in comparing the goods and the channels of trade for those goods we must consider the goods as identified in the application and registration. *See Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed.").

There is no real dispute as to the scope of the goods identified in the application. Applicant explains that its goods are lights an individual would wear on the head while bicycling at night, exploring caves or while engaged in other sports or recreational pursuits. Applicant also acknowledges that the identification could also cover lights attached to helmets used in mining and other industrial activities.

The Examining Attorney argues that personal headlamps and electric lighting fixtures are related because the

4

primary purpose of both types of goods is "… to emit and to provide light."  Examining Attorney's Brief at 8.  The Examining Attorney argues further, "… registrant's fixtures are broad enough to encompass applicant's goods.  'Lighting fixtures' is (sic) defined as 'a fixture providing artificial light.'  …  'Fixture' is defined as an 'object in a fixed position:  an object with a fixed position and function.'  Therefore, a fixture can include a personal headlamp, as such goods are placed in a fixed position on one's head or helmet."  *Id.*

At the outset we note that the mere fact that both types of goods at issue here emit and provide light is not a sufficient basis for us to conclude that the goods are related.  The goods, as identified, are sufficiently different in their uses to require proof that they are related.  Nor can we conclude by intuition that both types of goods would be sold through common trade channels.

The Examining Attorney has made of record six use-based, third-party registrations and copies of pages from several websites in an attempt to show that personal headlamps and electric lighting fixtures are related.  In its brief applicant analyzed each piece of evidence in detail in an attempt to show that the evidence lacks

probative value.  We find applicant's analysis both thorough and persuasive.

First, as to the third-party registrations, only one arguably includes personal headlamps.  Registration No. 319048 for CLUSTERLIGHT does identify "high-beam head lamps," but Registration No. 3319016 for CAT'S MEGAMAN, which is owned by the same registrant and identifies nearly identical goods, identifies those same goods as "high-beam head lamps in the nature of headlights for vehicles," thereby indicating that the CLUSTERLIGHT "head lamps" are also for vehicles.  Registration Nos. 2858799, 2991658 and 3331610 specifically state that the "headlamps" are for use with vehicles.  Only Registration No. 3411376 for the mark PANASONIC identifies both "head lamps" and "fluorescent lighting fixtures."  Even if we read "head lamps" here to refer to "personal headlamps" and not to "vehicle headlamps," we find that this one third-party registration is not sufficient to establish that "personal headlamps" and "lighting fixtures" are goods that may emanate from a single source, even when considered with the other evidence.

The PANASONIC registration illustrates another limitation in the probative value of a number of the third-party registrations at issue here.  In addition to goods

6

concerned with lighting, the registration also identifies automatic bread-making machines, rice cookers, various types of cooking ovens, ventilation systems and air conditioners.  The diversity of the goods identified in this registration diminishes the probative value in establishing that any two items identified in the registration are related.  *See In re Davey Products Pty Ltd.*, 92 USPQ2d 1198, 1203 (TTAB 2009).  Without speculating as to other uses of the PANASONIC mark, we conclude that the diversity of goods identified in the registration of record is sufficient to establish that PANASONIC is a house mark, or the equivalent, used on a wide variety of goods which are otherwise unrelated.

Perhaps the best example of this difficulty is Registration No. 2991658.  Though the registration is limited to International Class 11 and is based on use in commerce, it includes a single-spaced identification of goods extending over five pages with an alphabetical listing of hundreds of items, including, among other things, agricultural irrigation units, bicycle lights, cotton candy making machines, drinking fountains, cryorefrigerators, electric blankets, electric espresso machines, energy storage plants, facial saunas, incinerators, nuclear reactors, portable toilets, sewage

treatment plants, tanning beds, used oil recovery units, sinks and hot tubs – virtually everything under the sun, including the kitchen sink.

In sum, we find that the third-party registrations are not probative of whether personal headlamps and electric lighting fixtures are related. While third-party registrations can play an important role in establishing that the types of goods at issue are related, examining attorneys must review the registrations carefully to ensure that each registration presented is probative and that the number of registrations is sufficient, along with other types of evidence, to establish that the types of goods at issue are related.

Turning to the website evidence, we likewise find the evidence not probative of the relatedness of personal headlamps and electric lighting fixtures. Here also, the evidence generally either fails to identify the particular types of goods at issue here, or the evidence is from sources which sell a broad range of varied and unrelated goods online. In discussing this evidence we will first concentrate on the evidence the Examining Attorney specifically cites and defends in her brief.

The Examining Attorney takes issue with applicant's criticism of the evidence from the thestar.com website.

Attachment to Office Action February 18, 2009.  The
Examining Attorney argues that, although the site features
a wide variety of goods, the site lists personal headlamps
and flashlights in the same category, and that the site
refers to "home lighting, lighting fixtures and ceiling
fans" as "related categories."  *Id.*  We find the connection
between the specific goods at issue here too attenuated.
This evidence falls far short of showing that the
circumstances surrounding the marketing of the respective
goods would result in relevant purchasers mistakenly
believing that the goods originate from the same source
when the same mark is used on both types of goods.  Again,
the Examining Attorney effectively concedes that the site
offers a wide range of goods, virtually any product or
service a consumer may desire.  The organization of the
goods on the site, and in particular, the designation of
related categories, is largely academic in view of the
variety of goods.

The Examining Attorney also argues, "Furthermore, the
TOOTOOMART cite (sic) shows both personal lighting products
as well as what the applicant would term light fixtures."
Examining Attorney's Brief at 7.  However, there is no
evidence of a personal headlamp for sale on the site.
Also, the pages provided state that the site is an "online

9

B2B [business to business] trading platform for both small and medium-sized international buyers and China suppliers." Attachment to Office Action of February 18, 2009. Again, this evidence is not probative of whether potential purchasers of the two relevant types of products would encounter them in circumstances which would lead to trademark confusion.

As to the other website evidence, we generally concur with applicant in concluding that it is not probative. For example, the evidence from the alibaba.com website consists of a listing of suppliers of various types of products. Nearly forty companies are listed, but not a single one indicates that it supplies both specific types of products at issue here. If anything, this evidence shows that suppliers concentrate in specific types of lighting products, for example, focusing on vehicle lights, outdoor lighting or flashlights. In any event, the evidence is not probative of the issue before us.

Also, applicant correctly points out that the evidence from the esources.co.uk website is not probative because the site merely provides a directory of wholesale distributors in the United Kingdom for a wide range of products. Therefore, it is not probative of how relevant U.S. consumers would view the respective types of goods.

10

Furthermore, although the Examining Attorney does not highlight this particular piece of evidence, applicant suggests that Item 17 shown in the pages from the theledlight.com website refers to personal headlamps. The site specializes in all things LED, including LED lighting fixtures and related parts, from various sources. The item in question refers to LED headlamps and other products. Even though the site refers to both LED personal headlamps and LED lighting fixtures, this single instance of both types of items appearing on a website is insufficient to establish that the two types of goods at issue are related.

Also, we reject the Examining Attorney's contention that the term electric lighting fixtures includes personal headlamps because the latter are in a "fixed position" on a person's head. "Fixture" is defined as "something attached as a permanent appendage, apparatus, or appliance: plumbing fixtures"; and "Law A chattel bound to realty." *The American Heritage Dictionary of the English Language* (4th ed. 2009).[1] Based on this definition, we find that the more reasonable construction is that electric lighting fixtures would generally include lighting fixtures which are

---

[1] We take judicial notice of this definition. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

permanently installed in a building or on other property and would exclude lighting devices worn temporarily on a person's head.

We also reject the Examining Attorney's argument that applicant has failed to show that the respective goods are not related. Apart from the inherent difficulty in proving a negative, it is the Examining Attorney's burden to make a prima facie showing that the goods are related. In this case the showing falls short.

In sum, we find the evidence of record insufficient to show that the circumstances surrounding the marketing of electric lighting fixtures, on the one hand, and personal headlamps, on the other hand, are such that relevant purchasers would mistakenly believe that the respective goods originate from the same source, even if the same mark is used on both.

**Decision**: We reverse the refusal under Trademark Act Section 2(d).