# United States Court of Appeals for the Federal Circuit

2006-1148
(Opposition No. 91124847)


FIRSTHEALTH OF THE CAROLINAS, INC.,

Appellant,

v.


CAREFIRST OF MARYLAND, INC.,

Appellee.


Anthony J. Biller, Coats & Bennett, P.L.L.C., of Cary, North Carolina, argued for appellant. Of counsel was David E. Bennett.

Barth X. DeRosa, Stevens Davis Miller Mosher LLP, of Washington, DC, argued for appellee.

Appealed from: United States Patent and Trademark Office, Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

2006-1148
(Opposition No. 91124847)


FIRSTHEALTH OF THE CAROLINAS, INC.,

Appellant,

v.


CAREFIRST OF MARYLAND, INC.,

Appellee.

_____

DECIDED:  February 27, 2007
_____


Before BRYSON, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

FirstHealth of the Carolinas, Inc. ("FirstHealth") appeals from a dismissal by the Trademark Trial and Appeal Board ("Board") of its counterclaim to cancel trademarks registered by CareFirst of Maryland, Inc. ("CareFirst"). CareFirst of Md., Inc. v. FirstHealth of the Carolinas, Inc., Opposition Nos. 91116355, 91124847 (T.T.A.B. Dec. 2, 2005) ("Dismissal"). Because the Board's findings are supported by substantial evidence, we affirm.

## I. BACKGROUND

In 1998 and 2001, FirstHealth filed intent-to-use trademark applications—Serial Nos. 75/455,343 and 76/222,230, respectively—for the FIRSTCAROLINACARE mark

used in conjunction with healthcare insurance claims administration and health maintenance organizations ("HMOs").  In each instance, CareFirst filed a notice of opposition alleging a likelihood of confusion with and dilution of its registered CAREFIRST mark.  The two proceedings were consolidated on March 7, 2003.

FirstHealth counterclaimed against CareFirst, seeking cancellation of the CAREFIRST trademark registrations based on abandonment due to uncontrolled licensing of the mark and failure to use the mark in connection with services other than HMO services.  In accordance with 37 C.F.R. § 2.121, the parties entered into a stipulation that provided a two-month extension of FirstHealth's case-in-chief testimony period until January 31, 2004.

On February 26, 2004, FirstHealth filed a motion to reopen its testimony period for the purpose of filing notices of reliance to introduce into evidence the discovery deposition of David Wolf (and related exhibits), certain discovery responses, and certified copies of third-party registrations.  FirstHealth attributed its late filing to the birth of counsel's son, the significant amount of testimony that was taken, counsel's time conflicts with unrelated matters, and a docketing error made by a new paralegal.  The Board found that FirstHealth failed to demonstrate excusable neglect and denied FirstHealth's motion to reopen the testimony period.  Dismissal, slip op. at 13.

Noting that FirstHealth's counterclaim arguments relied principally on the Wolf deposition—which was not of record—the Board found that FirstHealth had failed to prove uncontrolled licensing of the mark or failure to use the mark by a preponderance of the evidence.  Id., slip op. at 29-33.  Accordingly, FirstHealth's counterclaims for cancellation were dismissed.  Id., slip op. at 33.  The Board also dismissed CareFirst's

oppositions, finding that there was no likelihood of confusion with or dilution of its registered mark. Id., slip op. at 75.

Although both parties initially appealed the Board's decision, CareFirst eventually moved to dismiss its appeal. That motion was granted on February 28, 2006. This case therefore concerns FirstHealth's appeal from the Board's denial of its motion to reopen the testimony period and the Board's dismissal of its counterclaim for cancellation of CareFirst's registered trademarks. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

### A. Jurisdiction

As a threshold matter, CareFirst argues that this appeal is moot and that we lack appellate jurisdiction. Specifically, CareFirst argues that by having dismissed its appeal from the opposition decision, the Board's rulings on the likelihood of confusion with and dilution of the CAREFIRST mark have a preclusive effect against CareFirst in any future proceedings against FirstHealth for use of the FIRSTCAROLINACARE mark. CareFirst argues that, as a result, the CAREFIRST mark cannot be asserted against FirstHealth and thus there is no potential "damage" as contemplated by 15 U.S.C. § 1064 to support FirstHealth's cancellation counterclaim.

CareFirst overstates the impact of the Board's findings. As the Board's regulations correctly recognize: "The Board is empowered to determine only the right to register. The Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition." T.B.M.P. § 102.01. The Board's decision does not bar CareFirst from using the CAREFIRST mark or from

asserting that mark in subsequent claims against FirstHealth for trademark infringement or unfair competition. See 15 U.S.C. § 1114(1) (registrant may bring infringement action against those using or reproducing marks for certain purposes when "such use is likely to cause confusion, or to cause mistake, or to deceive"). Although the Board's findings may preclude CareFirst from re-litigating the narrow issues addressed by the Board in the opposition proceeding,[1] the CAREFIRST mark may still be used to cause "damage" by means that do not involve inquiries into likelihood of confusion or dilution. Accordingly, the appeal is not moot, and we turn to the merits of the case.

## B. Excusable Neglect

The primary issue on appeal is whether the Board erred in denying FirstHealth's motion to reopen the testimony period for failure to show excusable neglect, which we review for an abuse of discretion. See Hewlett-Packard Co. v. Olympus Corp., 931 F.2d 1551, 1552 (Fed. Cir. 1991). FirstHealth argues that the Board abused its discretion in applying the factors identified by the Supreme Court in Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), because each factor weighs in favor of accepting FirstHealth's late filing.

The Board's regulations allow a testimony period to be reopened upon a showing of "excusable neglect," but do not specify what is meant by that term. See 37 C.F.R. § 2.116(a) (inter partes proceedings before the Board are generally governed by the

---

[1] We do not decide whether the Board's likelihood of confusion and dilution findings would have a preclusive effect on the same issues in some hypothetical future litigation; indeed, they may not. See Jim Beam Brands Co. v. Beamish & Crawford, Ltd., 937 F.2d 729, 734-36 (2d Cir. 1991) (holding that the issue of likelihood of confusion in a prior cancellation proceeding was sufficiently different from the issue of likelihood of confusion presented in subsequent litigation such that the Board's finding did not have preclusive effect).

Federal Rules of Civil Procedure); Fed. R. Civ. P. 6(b)(2). In Pioneer, the Supreme Court addressed the meaning of "excusable neglect" in the context of the Federal Rules of Bankruptcy Procedure. According to the Court, the determination of whether a party's neglect is excusable is:

> at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . [1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

507 U.S. at 395. The Board adopted these factors for determining excusable neglect in Pumpkin Ltd. v. The Seed Corps, 43 USPQ2d 1582 (T.T.A.B. 1997), and has found the third factor—the reason for the delay and whether it was within the movant's control—to be of paramount importance. Old Nutfield Brewing Co., v. Hudson Valley Brewing Co., 65 USPQ2d 1701 (T.T.A.B. 2002) (citing Pumpkin, 43 USPQ2d at 1586 n.7).

The Board has discretion to reasonably interpret the meaning of "excusable neglect" in the context of its own regulations. See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (an agency's interpretation of its own regulation is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation" (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945))). Although the Board was not required to adopt the interpretation of "excusable neglect" articulated in Pioneer, doing so was reasonable, and we defer to that interpretation. See Custom Computer Servs., Inc. v. Paychex Props., Inc., 337 F.3d 1334, 1336 (Fed. Cir. 2003) (deferring to the Board's interpretation of "mistake" in the context of 37 C.F.R. § 2.102(b)).

The Board's decision in Pumpkin is on point. In that case, a party in an opposition proceeding filed a motion to reopen its testimony period, arguing that its failure to submit evidence during the assigned testimony period was the result of excusable neglect. 43 USPQ2d at 1583. The Board found that there was no danger of prejudice to the non-moving party and no evidence of bad faith. Id. at 1587-88. The Board nevertheless denied the motion based on the second and third Pioneer factors. Id. In doing so, the Board noted that because the reason for delay—a docketing error— was "wholly within the reasonable control of [the movant], the third Pioneer factor weighs heavily against a finding of excusable neglect." Id. at 1587. The Board also noted that its interest in deterring delay due to "sloppy practice or inattention to deadlines" was relevant to the second Pioneer factor and also "weighs heavily against a finding of excusable neglect." Id. at 1588.

Here, the reasons given for delay were wholly within FirstHealth's reasonable control.[2] Indeed, two of the reasons for delay were accounted for in FirstHealth's Stipulated Motion for Enlargement of Testimony and Briefing Periods, which extended the testimony period to January 31, 2004 "to accommodate [FirstHealth's] witness' [sic] schedules and conflicts with counsels' schedules." FirstHealth's complaint of a docketing error is belied by its reference to the January 31, 2004 deadline in a motion it filed before the deadline had expired. Finally, to the extent an attorney's family matters caused delay, FirstHealth provides no explanation as to why other authorized

---

[2] On appeal, FirstHealth also points to the hospitalization of counsel's son as a reason for delay. That hospitalization did not occur until after the testimony period closed and was not raised in FirstHealth's motion to reopen the testimony period. Although unfortunate, there is no explanation as to how this event resulted in FirstHealth's failure to submit its notices of reliance before the testimony period expired. We therefore do not consider it on appeal.

individuals in the same firm could not have assumed responsibility for the case. See HKG Indus., Inc. v. Perma-Pipe, Inc., 49 USPQ2d 1156 (T.T.A.B. 1998) (finding that a failure to explain why other authorized individuals could not have assumed responsibility after counsel's death weighed against finding excusable neglect). As in Pumpkin, substantial evidence supports a finding that the second and third factors weigh against excusable neglect. Accordingly, the Board's finding in this case is consistent with its prior practice, and it did not abuse its discretion in denying FirstHealth's motion to reopen the testimony period.

FirstHealth argues that the undisputed facts of record prove its cancellation counterclaims even without the excluded evidence. We find that argument unpersuasive. Abandonment is a question of fact, and the Board's findings are sustained if supported by substantial evidence. On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1087 (Fed. Cir. 2000). FirstHealth bears the burden of proving abandonment by a preponderance of the evidence. Rivard v. Linville, 133 F.3d 1446, 1449 (Fed. Cir. 1999). Without the properly excluded testimony evidence, the Board's finding that FirstHealth failed to prove uncontrolled licensing or failure to use by a preponderance of the evidence is supported by substantial evidence.

## III. CONCLUSION

Because the Board did not abuse its discretion in denying FirstHealth's motion to reopen the testimony period, and because substantial evidence supports the Board's finding that FirstHealth failed to prove its cancellation counterclaims, the Board's decision is

### AFFIRMED.

COSTS

No costs.