THIS OPINION IS A
PRECEDENT OF THE
TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

BUTLER

Mailed: July 22, 2011

Opposition No. 91181806

**VITAL PHARMACEUTICALS, INC.**

v.

**CONRAD J. KRONHOLM, JR.**

**Before Quinn, Holtzman and Ritchie, Administrative Trademark Judges.**

**By the Board:**

Applicant seeks to register the mark REDLINE, in standard character form, for "cosmetics, perfumes, and fragrances for personal use."[1] As grounds for the opposition, opposer claims priority of use and likelihood of confusion with its previously used and registered marks REDLINE as follows: in typed form for "nutritional supplements";[2] in standard character form for "distributorships in the field of nutritional supplements, ready-to-drink nutritional beverages, isotonic drinks, and sports

---

[1] Application Serial No. 77156346, filed on April 13, 2004, claiming a *bona fide* intent to use the mark in commerce under Trademark Act § 1(b).

[2] Registration No. 2857015, issued on June 22, 2004, claiming a date of first use anywhere of August, 2003 and a date of first use in commerce of September, 2003. Trademark Act § 8 affidavit accepted; Trademark Act § 15 affidavit acknowledged. "Typed form" was changed to "standard character" by amendment of Trademark Rule 2.52(a), 37 C.F.R. § 2.52(a), dated November 2, 2003. *See also* TMEP §§ 807.03 and 807.03(i) (7th ed. Oct. 2010).

drinks; wholesale distributorships featuring nutritional supplements, ready-to-drink nutritional beverages, isotonic drinks, and sports drinks; retail store services featuring nutritional supplements, ready-to-drink nutritional beverages, isotonic drinks, and sports drinks; on-line retail store services featuring nutritional supplements, ready-to-drink nutritional beverages, isotonic drinks, and sports drinks";[3] and in standard character form for "isotonic drinks; sports drinks."[4]

With its notice of opposition, opposer submitted copies of its pleaded registrations taken from the USPTO's electronic databases showing that the registrations are currently valid and subsisting and are owned by opposer. Accordingly, the registrations are of record for all purposes in this proceeding. Trademark Rule 2.122(d)(1), 37 C.F.R. § 2.122(d)(1). *See also* TBMP §§ 317 and 704.03(b)(1)(A) (3d ed. 2011).

In his answer, applicant admits that opposer "applied for and received" the pleaded registrations,[5] but denies that such registrations are valid, subsisting and not cancelled;[6] and

---

[3] Registration No. 3359351, issued on December 25, 2007, claiming a date of first use anywhere and a date of first use in commerce of September 30, 2003.

[4] Registration No. 3359350, issued on December 25, 2007, claiming a date of first use anywhere and a date of first use in commerce of March 31, 2004.

[5] *See* notice of opposition ("Opp.") at paragraph ("para.") Nos. 4, 6 and 8; and applicant's answer ("Ans."), filed April 14, 2008, at para. Nos. 4, 6 and 8.

[6] *See* Opp. at para. Nos. 5, 7, and 9; and Ans. at para. Nos. 5, 7 and 9.

applicant admits that "[c]osmetics, perfumes and fragrances are sold in the same mass market stores and pharmacies, such as Wal-Mart, Walgreens, and CVS, where nutritional supplements are sold."[7]  Applicant otherwise denies the essential allegations of the notice of opposition.

On August 17, 2010, the Board sent opposer an order to show cause under Trademark Rule 2.128(a)(3), 37 CFR § 2.128(a)(3), because the time for opposer to file its main brief, which was due on July 28, 2010, had expired and no brief had been filed. Opposer filed a response, and applicant replied thereto.  We also note that opposer's testimony period (the time in which opposer was to submit evidence in support of its claim) closed on February 13, 2010, and that opposer did not file any evidence or take any testimony during its assigned testimony period.

In its response to the order to show cause, opposer states that, since shortly after it filed and served its "Pretrial Disclosure Statement," the parties have attempted to settle this case; that settlement is not likely to occur; and that it intends to continue with the opposition.  Opposer requests that its time to file a brief be extended and that all "remaining deadlines" be reset "to allow the parties to conclude the trial period of this matter."[8]

---

[7] *See* Opp. at para. No. 13; and Ans. at para. No. 13.

[8] As addressed later in this order, opposer's request is being construed as one to reopen its time to file its brief and to reopen its testimony period.

3

In his response, applicant states that there have been no settlement discussions. In particular, applicant points out that opposer sent a communication to him dated November 12, 2009 stating that "… opposer does not wish to settle, or enter into any agreement"; and that, in its January 13, 2010 filing with the Board, opposer stated, in its request for an extension of time, that the "[p]arties have reached an impasse…."[9]

**The show cause order for failure to file a brief is discharged.**

The purpose of Trademark Rule 2.128(a)(3) is to save the Board the burden of determining a case on the merits where the parties have settled, but have neglected to notify the Board thereof, or where the plaintiff has lost interest in the case. It is not the policy of the Board to enter judgment against a plaintiff for failure to file a main brief on the case if the plaintiff still wishes to obtain an adjudication of the case on the merits. *See* TBMP § 536 (3d ed. 2011). If a show cause order is issued under Trademark Rule 2.128(a)(3) and the plaintiff files a response indicating that it has not lost interest in the case, the show cause order will be discharged, and judgment will not be entered against the plaintiff for failure to file a main brief.

Here, it is clear that opposer has not lost interest in this case. Accordingly, the order to show cause under Trademark Rule

---

[9] The Board notes in passing that, of the several consented motions to extend the schedule of record, only the January 13, 2010 request references settlement.

2.128(a)(3), dated August 17, 2010, is discharged and judgment will not be entered against opposer based on a loss of interest in this case. However, as discussed below, the fact that an order to show cause for failure to file a brief has been discharged because the plaintiff indicated it has not lost interest in the case does not necessarily result in acceptance of a late-filed brief or in a resetting of the time to file the brief.

**Opposer's motion to reopen either its time to file its brief or its main testimony period is denied.**

Opposer has asked that the time for it to file its main brief be "extended" and for the Board "to reset the remaining deadlines to allow the parties to conclude the trial period." Broadly construed, opposer's motion asks that the trial and briefing periods be reopened.[10]

The requisite showing to be made by a party seeking to reopen an expired period, pursuant to Fed. R. Civ. P. 6(b)(1)(B), is that of excusable neglect. *See also* TBMP §§ 509.01(b)(1), 534 and 536 (3d ed. 2011). Even where a plaintiff has shown that it is still interested in having the Board decide the case on its merits, and the show cause order under Trademark Rule 2.128(a)(3) has been discharged, unless the plaintiff has included with its response a motion to reopen its time for filing its brief, as opposer did here, and has shown the requisite excusable neglect,

---

[10] The Board construes a motion to extend an expired time as a motion to reopen such period. *See* TBMP § 509.01 (3d ed. 2011).

5

the plaintiff may not be accorded a second chance to file a brief.[11]  *See* TBMP § 536 (3d ed. 2011).

There are four factors to be considered, within the context of all the relevant circumstances, to determine whether a party's neglect of a matter is excusable.  They are:  (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the moving party; and, (4) whether the moving party has acted in good faith.  See *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993).  These factors do not carry equal weight.  *See FirstHealth of the Carolinas Inc. v. CareFirst of Maryland Inc.*, 479 F.3d 825, 81 USPQ2d 1919, 1921-22 (Fed. Cir. 2007)(Court affirmed finding of no excusable neglect based on second and third factors, with third weighed heavily in the analysis).  The Board has also noted, on numerous occasions, that several courts have stated the third factor may be considered the most important

---

[11] The case at hand must be distinguished from one in which there is no evidence of record, or no material admission of fact in the defendant's answer on an issue to be determined with respect to the plaintiff's claims.  In cases where there is no evidence of record, and there are no material admissions of fact, absent a request to reopen the testimony period, and the corresponding, requisite showing of excusable neglect to reopen the testimony period, it would be futile to reopen only the time to file a plaintiff's main brief.  In this case, opposer has some evidence upon which to rely (*i.e.,* copies of its pleaded registrations) as well as applicant's admissions in his answer.  Accordingly, should opposer show excusable neglect, so as to allow a reopening of the time for it to file its main brief, it would not be futile to reset the time for filing briefs in this case.

factor in any particular case. *See, e.g., Pumpkin Ltd. v. The Seed Corps*, 43 USPQ2d 1582, 1586 at fn.7 (TTAB 1997).

Applying the *Pioneer* analysis, there does not appear to be measurable prejudice to applicant should the Board reopen opposer's testimony period and/or time to file its main brief. That is, there is no showing by applicant of lost evidence or unavailable witnesses, or that applicant would be handicapped at trial. *See Pratt v. Philbrook*, 109 F.3d 18, 22 (1st Cir. 1997); *Paolo Associates Ltd. Partnership v. Bodo*, 21 USPQ2d 1899, 1904 (Comm'r 1990).

As to the second *Pioneer* factor, a reopening of the testimony period, which closed seven months prior to opposer's request to reopen that period, would cause substantial delay to this opposition. A reopening of the time to file a brief, and its potential impact on judicial proceedings, would cause a less significant delay.

With respect to the third *Pioneer* factor, *i.e.* the reason for the delay and whether it was within opposer's control, and opposer's excuse that it sought to settle the proceeding, while attempts at settlement are favored, they do not excuse an opposer's failure to act within the prescribed times. *See Atlanta-Fulton County Zoo Inc. v. DePalma*, 45 USPQ2d 1858, 1859 (TTAB 1998) (the belief in settlement and/or the existence of settlement negotiations do not justify a party's inaction or delay or excuse it from complying with the deadlines set by the

7

Board or imposed by the rules.)  Moreover, in this case, it does not appear that the parties were engaged in any meaningful settlement discussions.  In fact, as previously noted, two months prior to the opening of its testimony period, opposer sent applicant a letter stating that opposer "does not wish to settle, or enter into any agreement," and shortly before the opening of its testimony period, opposer stated that the parties had reached an impasse.  We cannot in these circumstances accept opposer's explanation that its failures to take testimony and file a brief (or obtain an extension of the deadlines for doing so) were due to settlement negotiations.

Opposer, who brought this opposition, has the burden of prosecuting its case.  Opposer could, and should, have sought extensions of its testimony period before its testimony period closed, and opposer could, and should, have sought an extension of its time to file a brief before such time expired.  The Board finds that the reasons relied upon by opposer for its failures to act prior to the close of its testimony period, and prior to the expiration of its time to file its main brief, were within opposer's reasonable control.  Those reasons, the purported existence of settlement discussions, simply did not prevent opposer either from taking testimony during the assigned period or filing a timely brief, or filing timely requests to extend either period prior to the expiration of the period.  In *FirstHealth*, the party's complaint that a docketing error should

8

be found to constitute excusable neglect was "belied by" reference to the testimony period deadline in a motion filed by the party before the period expired.  81 USPQ2d at 1922. Similarly, in this case, opposer's reliance on purported settlement negotiations is belied by its own communications with applicant and the Board.

As to the fourth *Pioneer* factor, there is no evidence that opposer was acting in bad faith.

After careful consideration of the *Pioneer* factors and the relevant circumstances in this case, the Board finds that opposer's reasons for not actively participating in this case fail to establish excusable neglect, and do not warrant a reopening of this case for the presentation of evidence and/or a reopening of opposer's time to file its main brief.  Although the first and fourth *Pioneer* factors do not weigh against opposer, the second factor weighs somewhat against opposer, and the third factor weighs heavily against opposer.

Accordingly, opposer's request to reopen its testimony period and its time to file a main brief is denied.

Had opposer's request to reopen its testimony been granted, then testimony and briefing periods for both parties would have been reset.  Had opposer's alternative request to reopen its time to file a brief been reset, then applicant's time for briefing the case also would have been reset.  Because we have denied opposer's motion to reopen in all respects, and because the

9

Board's order to show cause issued prior to the due date for applicant's brief, were there any need to resume this proceeding we would do so by resetting the time for applicant to file its brief. However, our review of opposer's limited evidence of record and the limited admissions contained in applicant's answer has revealed that there is no need to obtain a brief on the merits from applicant.

## **Opposer's evidence of record is insufficient to establish its claim.**

Opposer, by way of its pleaded registrations and applicant's admission in his answer, has some evidence of record which we now consider in determining the merits of the opposition. The Board must determine whether such evidence makes a *prima facie* case for opposer. *Cf*. TBMP § 534.03 discussing a motion for judgment directed to the sufficiency of the plaintiff's trial evidence where such evidence consists only of the plaintiff's pleaded registrations. *See also Syntex (U.S.A.) Inc. v. E.R. Squibb & Sons Inc.*, 14 USPQ2d 1879, 1880 (TTAB 1990).

### 1. Standing

In view of opposer's introduction of its pleaded registrations with its notice of opposition, demonstrating that it is the owner of record of such registrations and they are valid and subsisting, opposer's standing is established. *See* Trademark Rule 2.122(d)(1); *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton*

*Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982); and *Metromedia Steakhouses, Inc. v. Pondco II, Inc.,* 28 USPQ2d 1205, 1209 (TTAB 1993).

### 2.  Priority

Where, as here, an opposer introduces evidence that its pleaded registrations are owned by opposer and are valid and subsisting, and there is no counterclaim to cancel such registrations, priority is not at issue.  *See King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974).  Accordingly, opposer has established the absence of any issue as to priority of use.

### 3.  Likelihood of confusion

*In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) sets forth the factors to be considered in determining likelihood of confusion.  The Board considers the probative facts in evidence that are relevant to such factors. *See In re Majestic Distilling Company, Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).  Therefore, not all the *du Pont* factors will play a role in every case.  The copies of opposer's pleaded registrations are considered for what probative value, if any, they may have.  *See Jean Patou, Inc. v. Theon, Inc.*, 18 USPQ2d 1072, 1075 (TTAB 1990).  Probative facts also may be established by way of admission.

Here, the parties' marks are identical:  REDLINE.  However, the parties' respective goods and services, as identified in the

11

respective registrations and application are, on their face, distinctly different.  There is no evidence of record showing that applicant's goods and opposer's services are related in such a manner that they could, because of the similarity of the marks, give rise to the mistaken belief that they originate from the same source.  *See Hilson Research, Inc. v. Society for Human Resource Management*, 27 USPQ2d 1423 (TTAB 1993).  With respect to opposer's goods, "nutritional supplements," and applicant's goods, "cosmetics, perfumes, and fragrances for personal use," we have applicant's admission that "[c]osmetics, perfumes and fragrances are sold in the same mass market stores and pharmacies, such as Wal-Mart, Walgreens, and CVS, where nutritional supplements are sold."  However, the presence of the parties' respective goods in the same store does not necessarily lead to the conclusion that confusion would arise.  *See Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151, 153 (CCPA 1978); *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976); and *Safeway Stores, Inc. v. Bel Canto Fancy Foods Ltd.,* 5 USPQ2d 1980, 1982-83 (TTAB 1987).  Here, there is no evidence that nutritional supplements and cosmetics, perfumes and fragrances would be sold in the same department or be situated near each other; nor is there evidence that the goods are complementary or would otherwise be purchased together, such that consumers would encounter both types of products in the course of a single

12

shopping trip. Moreover, there is no basis, such as evidence that the same companies make nutritional supplements and cosmetics, perfumes and fragrances, or that they sell such products under a single mark, upon which we could conclude that consumers would assume that these different products emanate from a single source.

The evidence of record does not make a *prima facie* case for opposer. That is, opposer has failed to meet its burden of proving likelihood of confusion. Accordingly, judgment is hereby entered against opposer and the opposition is hereby dismissed with prejudice.

☼☼☼