THIS OPINION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451
General Contact Number: 571-272-8500

BUO

Mailed: November 25, 2014

Cancellation No. 92057932

*NSM Resources Corp.; and
Huck Doll LLC, joined as party
plaintiff*

*v.*

*Microsoft Corp.*

**Before Cataldo, Mermelstein, and Bergsman, Administrative
Trademark Judges.**

**By the Board:**

Now before the Board are Microsoft Corp.'s ("respondent") motion, filed

November 6, 2013, to dismiss the petition to cancel its Registration No.

3300210 for the mark XBOX 360;[1] and its subsequent motion, filed November

28, 2013, for entry of sanctions against petitioner, NSM Resources, and its

president Zane Murdock, for "filing a string of baseless and harassing

---

[1] The registration issued September 25, 2007, from an application filed May 12, 2005. The identification in the registration as it issued was "[p]ublications, namely, strategy guides, user manuals, and magazines all in the field of computer games, science fiction, games and entertainment; pens, notebooks," in International Class 16. Respondent filed its Combined Declaration of Use and Incontestability under Sections 8 and 15 of the Trademark Act, 15 U.S.C. §§ 1058(a) and 1065, on September 13, 2013, deleting the references to "magazines" and "notebooks" from the identification of goods. The petition for cancellation was filed on September 21, 2013, after respondent filed its Declaration.

petitions for cancellation against [respondent]," citing Fed. R. Civ. P. 11(b) and (c) and U.S. Patent and Trademark Office (USPTO) Rules 11.18(b) and (c). Additionally, on October 2, 2014, during the consideration of this motion, petitioner filed a "change of correspondence," which indicated that petitioner had "assigned all right, title, and interest to the [pleaded] trademark applications and registrations … to Huck Doll LLC."

### *Joinder/Substitution*

When there has been an assignment of a mark that is the subject of, or relied upon in, an *inter partes* proceeding before the Board, the assignee may be joined or substituted, as may be appropriate, upon motion granted by the Board, or upon the Board's own initiative. *See, e.g., Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1955 n.1 (TTAB 2008).

Where a mark pleaded by a plaintiff is assigned and such assignment is recorded with the USPTO's Assignment Branch, the assignee ordinarily will be substituted for the originally named party if the assignment occurred prior to the commencement of the proceeding, if the discovery and testimony periods have closed, if the assignor is no longer in existence, or, at the Board's discretion, if the defendant raises no objection to substitution. Otherwise, the assignee will be joined, rather than substituted. *See* Trademark Rules 2.113(c)-(d) and 3.71(d); Fed. R. Civ. P. 17 and 25; *Drive Trademark Holdings LP v. Inofin,* 83 USPQ2d 1433, 1434 n.1 (TTAB 2007); TBMP § 512.01 (2014).

In the present case, the assignment was executed on October 2, 2014, over one year after this proceeding was instituted on September 27, 2013. Further, there is nothing of record to indicate that petitioner NSM Resources Corp., or the business connected with the mark, is no longer in existence.

Accordingly, we find that joinder, rather than substitution, would be appropriate in this matter. Therefore, assignee Huck Doll LLC is **JOINED** as a party-plaintiff with petitioner NSM Resources, and we use the plural "petitioners" in the remainder of this opinion."[2]

*Pleadings*

The petition for cancellation alleges that the involved registration was obtained fraudulently and that respondent's use of its mark constitutes a misrepresentation of source under Trademark Act Section 14, 15 U.S.C. § 1064. Respondent contends that petitioners have failed to state a claim upon which relief may be granted by failing to sufficiently plead a valid ground for cancellation.

Petitioners' complaint centers on respondent's publishing of a user manual for a video game program entitled "Stoked,"[3] which displays the term "Huck" in its pages, a term in which petitioners claim rights. In response to

---

[2] While respondent has not, at least to date, responded to petitioners' filing, it is mislabeled as a mere request to change correspondence address when it reports an assignment. Accordingly, we do not view respondent's non-response as significant. Further, joinder is appropriate because the sole principal of both assignor and assignee is the same individual.

[3] It appears from the allegations in the petition to cancel that the STOKED game runs on respondent's XBOX 360 platform.

respondent's motion, petitioners contend that "[n]o doubt exists [respondent] violates TMEP § 906.04 in use of the Registration." Petitioners assert that "Microsoft's abuse of NSM Resources' 'huck' Trademark in use of the Registration violates Trademark laws as NSM Resources has priority to the 'huck' Trademark."

### *Motion to Dismiss*

A motion to dismiss for failure to state a claim upon which relief may be granted is a test solely of the legal sufficiency of a complaint. *See Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys. Inc.*, 988 F.2d 1157, 26 USPQ2d 1038, 1041 (Fed. Cir. 1993). In order to withstand such a motion, a complaint need only allege such facts as would, if proven, establish that the plaintiff is entitled to the relief sought; that is, that (1) the plaintiff has standing to maintain the proceeding, and (2) a valid ground exists for denying the registration sought, or cancelling an issued registration. *Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1754 (Fed. Cir. 1998); *Doyle v. Al Johnson's Swedish Restaurant & Butik Inc.*, 101 USPQ2d 1780, 1782 (TTAB 2012). A petitioner does not bear the burden of proving its case in its petition for cancellation. *Enbridge, Inc. v. Excelerate Energy Ltd. P'ship*, 92 USPQ2d 1537, 1543 n.10 (TTAB 2009). Rather, all well-pleaded, material allegations in the complaint are accepted as true and construed in favor of the complaining party. *See, e.g.*, *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1027 (Fed. Cir. 1999); *Doyle*, 101 USPQ2d at 1782. However, "we are

not required to accept as true legal conclusions or unwarranted factual inferences." *In re Bill of Lading Transmission and Processing System Patent Litig.*, 681 F.3d 1323, 103 USPQ2d 1045, 1051 (Fed. Cir. 2012) (citation omitted).

- **Standing**

The starting point for a standing determination in a cancellation proceeding is Trademark Act Section 14, which provides that "[a] petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed . . . by any person who believes that he is or will be damaged . . . by the registration of a mark on the [P]rincipal [R]egister." Section 14 thus establishes a broad doctrine of standing; by its terms, the statute requires only that a person have a belief that he would suffer some kind of damage if the mark is registered. As interpreted in binding precedent, a petitioner must have a "real interest" in the outcome of the proceeding, and a "reasonable basis" for its belief that it would suffer some kind of damage by the continued registration of the mark. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Universal Oil Prods. Co. v. Rexall Drug & Chem. Co.*, 463 F.2d 1122, 1123, 174 USPQ 458, 459 (CCPA 1972).

Here, petitioners appear to base their pleading of standing on ownership of "twelve … Trademark Registrations or [pending] Applications for [the marks] HUCK, HUCK DOLL, and HUCK NEWS," all in standard character

form ("HUCK marks"). However, petitioners' pleaded HUCK marks bear no resemblance at all to the mark sought to be cancelled – XBOX 360 – in appearance, sound, meaning or commercial impression. *See Palm Bay Imps. Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005).

Petitioners have otherwise failed to allege in the petition to cancel facts which, if proven, would establish a real interest in the proceeding, i.e., a personal interest in the outcome of the proceeding and a reasonable basis for a belief of damage arising from the continued subsistence of the involved registration on the Principal Register. *See McDermott v. San Francisco Women's Motorcycle Contingent*, 81 USPQ2d 1212, 1214 (TTAB 2006) ("The purpose of the standing requirement, which is directed solely to the interest of the plaintiff, is to prevent litigation when there is no real controversy between the parties."), *aff'd*, 240 Fed. Appx. 865 (Fed. Cir. 2007); *Doyle*, 101 USPQ2d at 1782-83 (TTAB 2012) ("while we must assume that petitioner has a 'real interest' or 'personal stake' in taking photographs of goats on grass roofs generally, petitioner does not relate this alleged impairment of his asserted interest in taking such photographs to *respondent's service mark* in any manner").

Petitioners' brief in response to the motion to dismiss asserts that petitioners have standing based upon respondent's incorporation of the term HUCK "at least four different times" into its user manuals for the video game

"Stoked," while "using a Trademark Registration symbol ®." Petitioners contend that such incorporation "infringes" petitioners' HUCK marks.[4] However, these assertions show that petitioners' belief of damage is <u>not</u> based on the registration of XBOX 360, as required by Section 14 of the Trademark Act, but instead is based on the incorporation of the term HUCK into a user's manual for a video game distributed under the STOKED trademark, and petitioners' belief that such incorporation infringes the HUCK marks. The fact that the word "Huck" may be used in respondent's written materials that happen also to bear respondent's registered mark, a mark not remotely similar to the word "Huck," does not establish a basis upon which to allege standing to cancel the registration of the subject mark.[5]

We accept as true petitioners' allegations that respondent improperly uses petitioners' registered HUCK marks in the user manual distributed with respondent's XBOX 360 product and petitioners' belief that this harms petitioners. However, the perceived damage is plainly not due to the <u>registration</u> of respondent's XBOX 360 mark, but instead by respondent's

---

[4] The Board is not authorized to determine issues of infringement or the right to use marks. *See* TBMP § 102.01.

[5] Indeed, if standing to oppose or seek cancellation of a registration could be based on a defendant's mere use of a term in written materials, without more, and no matter how tangentially related to a registered mark, trademark owners would be discouraged from registering their marks, contrary to public policy encouraging registration. Moreover, unscrupulous plaintiffs could file baseless proceedings not contemplated by the Trademark Act for harassment or other improper purposes.

allegedly improper <u>use</u> of petitioners' HUCK marks.[6] Thus, even if petitioners do suffer damage by respondent's distribution of its user manuals, that damage has nothing to do with respondent's registered mark. Because the petition and petitioners' arguments show that it is not the continued registration of respondent's XBOX 360 mark that is harming petitioners (and that, as a consequence, the mark's cancellation cannot help), petitioners have no personal stake in this proceeding to cancel the XBOX 360 registration, and no reasonable belief of damage caused by the continued subsistence of the XBOX 360 registration.

Petitioners have not cited any authority, nor is the Board aware of any, which supports petitioners' contention that the circumstances described in their pleading, or even in their response brief, constitute an adequate pleading of standing. Based on the foregoing, petitioners have failed to plead their standing. Because sufficient pleading of standing is a necessary element of a petition to cancel, the petition's failure to properly plead standing by itself provides a basis for dismissing the petition. However, we continue to also consider the sufficiency of the two claims asserted by petitioners.

- **Fraud**

Petitioners arguably assert two bases for their fraud claim: 1) respondent's alleged misuse of the trademark registration symbol, ®, and 2)

---

[6] We express no opinion as to the factual or legal viability of any such claim. As already noted, such matters are beyond our jurisdiction.

respondent's allegedly false statements made in its declaration of use and incontestability. The two bases will be considered in turn.

Petitioners indicate in their response brief that part of their fraud claim is based on Trademark Manual of Examining Procedure[7] ("TMEP") § 906.04 (2014), which states:

> Improper use of the federal registration symbol, ®, that is deliberate and intends to deceive or mislead the public or the USPTO is fraud. *See Copelands' Enters. Inc. v. CNV Inc.*, 945 F.2d 1563, 20 USPQ2d 1295 (Fed. Cir. 1991); *Wells Fargo & Co. v. Lundeen & Assoc.*, 20 USPQ2d 1156 (TTAB 1991).

Petitioners claim that "[i]n 2008, [respondent] published, or agreed to publish, the user manual … misusing a Registration symbol ® for STOKED which gained Registration for other goods in 2009." Petition for Cancellation, ¶ 13. This compound allegation, or its parts, if taken as true, would not entitle petitioners to cancellation of the subject registration. Indeed, petitioners' allegations speak to respondent's use of the registration symbol in conjunction with the mark STOKED and not the mark XBOX 360. But the petition in this case does not identify or seek cancellation of any registration owned by respondent for STOKED. It seeks only cancellation of respondent's registration for XBOX 360. This allegation, therefore, is of no moment to the

---

[7] Although it "sets forth the guidelines and procedures followed by the examining attorneys at the PTO," "the TMEP does not have the force and effect of law," *W. Fla. Seafood Inc. v. Jet Rests. Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1664 (Fed. Cir. 1994). Accordingly, mere reference to the TMEP does not in itself constitute proper pleading of grounds for cancellation.

proceeding at hand. Thus, the petition fails to state a claim concerning the alleged misuse of the ® symbol with respect to the mark STOKED.[8]

As a second basis for the asserted fraud claim, petitioners allege that "[b]ased on information and belief," in filing its declaration of use and incontestability respondent "requested to delete *magazines* and *notebooks* from the Registration because [respondent] never used *magazines* and *notebooks* in the United States at the time it gained the Registration" of the mark XBOX 360 (emphasis in original). Petition for Cancellation, ¶ 11. Adequate pleading of a fraud claim requires an allegation of a specific false statement of material fact that respondent made in obtaining the involved registration with the intent to deceive the USPTO into issuing that registration. *See In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009). An allegation of fraud must assert the elements of fraud with particularity in accordance with Fed. R. Civ. P. 9(b). Under Rule 9(b), together with Fed. R. Civ. P. 11 and USPTO Rule 11.18, "the pleadings [must] contain explicit rather than implied expression of the circumstances

---

[8] Petitioners' claim is also deficient for another reason. In the context of an *inter partes* proceeding before the Board, in order to form a basis to defeat a registrant's rights to its registration, an allegation of premature use of the registration symbol must have arisen from registrant's intent to deceive the purchasing public or others in the trade into believing that the mark was in fact registered. *See Wells Fargo & Co. v. Lundeen & Assoc.*, 20 USPQ2d 1156, 1157-8 (TTAB 1991); *Fort Howard Paper Co. v. Federated Foods, Inc.,* 189 USPQ 310, 314 (TTAB 1975) ("improper use of a registration notice by an applicant is actionable only when it can be conclusively established that such use was occasioned by an intent, actual or implied, to deceive the purchasing public or even others in the trade into believing that the mark is in fact a registered mark entitled to all the presumptions under Section 7(b) of the Statute."), *aff'd*, 544 F.2d 1098, 192 USPQ 24, 27 (CCPA 1976). Petitioners failed to plead any allegations that respondent's use of the registration symbol constituted an attempt by respondent to deceive anyone.

constituting fraud." *Asian and Western Classics B.V. v. Selkow*, 92 USPQ2d 1478 (TTAB 2009) (*citing King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 212 USPQ 801, 803 (CCPA 1981)).

Pleadings of fraud "based on information and belief" without allegations of specific facts upon which the belief is reasonably based are insufficient. *See Asian and Western Classics*, 92 USPQ2d at 1479.[9] The allegations in the petition to cancel concerning respondent's alleged lack of use of the mark XBOX 360 on magazines and notebooks therefore are insufficient to plead a claim of fraud.

Based upon the foregoing, petitioners' fraud claims based upon alleged misuse of the trademark registration symbol, and on statements contained in respondent's combined Section 8 and 15 declaration are insufficient.

---

[9] Petitioners also appear to attempt to renew an earlier claim that fraud was committed in the submission of respondent's statement of use, which petitioner NSM Resources raised in previously filed and dismissed Cancellation No. 92056441 ("the '441 proceeding"). Petitioners' allegations regarding respondent's Section 8 and 15 filings allege respondent's "acknowledge[ment] [of] the errors in the Statement of Use." The recitation of errors, without more, is not a sufficient pleading of fraud. As explained to petitioner NSM in the '441 proceeding, "[p]leadings of fraud which rest solely on allegations that the trademark … registrant made material representations of fact in connection with its … registration which it 'knew or should have known' to be false or misleading are an insufficient pleading of fraud because [such allegations imply] mere negligence[,] and negligence is not sufficient to infer fraud or dishonesty." *Asian and Western Classics*, 92 USPQ2d at 1479 (*citing In re Bose*, 91 USPQ2d at 1940). There is no fraud if a misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive. *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981). Thus, a party alleging fraud must set out facts which if true, would at least support an inference of deceptive intent. *Cf. In re Bose*, 91 USPQ2d at 1942 (fraud standard at trial).

- **Misrepresentation of Source**

We now review petitioners' claims in paragraphs 16 and 17 of the petition to cancel to determine if they assert a claim that respondent is using the XBOX 360 mark so as to misrepresent the source of the goods listed in its registration. *See* Trademark Act § 14(3), 15 U.S.C. § 1064(3). In those paragraphs petitioners allege:

> 16. NSM Resources contends that Microsoft's use of the Registration in publication of the user manual depicted in EXHIBIT A misrepresents the source of NSM Resources' Trademark Registrations as evidenced by the use of "huck" in the center;

> 17. NSM Resources contends that Microsoft's use of the Registration in publication of the user manual depicted in EXHIBIT A misrepresents "huck" or a derivation thereof at least four other times throughout.

However, "[a] pleading of misrepresentation of source 'must be supported by allegations of blatant misuse of *the* [*subject*] *mark* by respondent in a manner calculated to trade on the goodwill and reputation of petitioner.'" *Otto Int'l Inc. v. Otto Kern GmbH*, 83 USPQ2d 1861, 1863 (TTAB 2007) (*quoting McDonnell Douglas Corp. v. Nat'l Data Corp.*, 228 USPQ 45, 47 (TTAB 1985)). "In order to prevail, petitioner must show that respondent took steps to deliberately pass off its goods as those of petitioner." *See Bayer Consumer Care AG v. Belmora LLC*, 110 USPQ2d 1623 (TTAB 2014). The petition to cancel does not allege that respondent's use of its XBOX 360 mark, which is the *only* subject of this cancellation proceeding, was calculated to

trade on the goodwill and reputation of petitioners, but instead discusses the marketplace usage of the term HUCK. Petitioners do not allege that the XBOX 360 mark is in any way associated with petitioners, so that its use by respondent could be perceived as an attempt to convey that petitioners are the source of respondent's identified goods. Accordingly, the facts alleged by petitioners do not plead a viable claim under Section 14(3).

Accordingly, respondent's motion to dismiss the petition to cancel is **GRANTED**.[10] The petition to cancel is **DISMISSED with prejudice**.

While the Board is generally liberal in granting leave to amend a pleading in order to cure any cited deficiencies where claims have been dismissed or stricken by a Board order, *see, e.g., IdeasOne, Inc. v. Nationwide Better Health, Inc.*, 89 USPQ2d 1952 (TTAB 2009), where, as here, any amendment would be futile, leave will not be granted. Indeed, petitioners have not asked for leave to amend, let alone explained how any amended petition would cure the defects discussed above. Given the record of this proceeding, and

---

[10] The Board is empowered to determine only the right to register. *See* Trademark Act Section 17, 15 U.S.C. § 1067. Accordingly, the Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition, or provide injunctive relief, or order the destruction of infringing articles as requested by petitioners. *See FirstHealth of the Carolinas Inc. v. CareFirst of Md. Inc.*, 479 F.3d 825, 81 USPQ2d 1919, 1921 (Fed. Cir. 2007); *Person's Co. v. Christman*, 900 F.2d 1565, 14 USPQ2d 1477, 1481 (Fed. Cir. 1990) (Board cannot adjudicate unfair competition issues). The Board cannot assess monetary damage awards. *General Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1591 (TTAB 2011) (no authority to determine the right to use, or the broader questions of infringement, unfair competition, damages or injunctive relief). Thus, regardless of the sufficiency or merits of petitioners' claims, the Board cannot grant the injunction or award of $1,000,000,000.00 sought by petitioners.

petitioners' history before the Board, as discussed further below, we would not, in any event, have granted petitioners leave to amend the pleading.

*Motion for Sanctions*

Respondent asserts that the current petition for cancellation as well as two previously filed petitions (one original petition and one amended petition[11]) "were solely brought to harass and burden [respondent]," and were "calculated to waste Board and party resources." Respondent goes on to assert that the present petition "follows a long line of harassing correspondence and actions NSM and Mr. Murdock [have] taken against [respondent]," and the products of various unrelated third parties. Petitioners argue that respondent's allegations "that [petitioner NSM and its president] harass 'others' … appears [sic] baseless and damaging."

As background, petitioner NSM previously filed a single petition for cancellation against respondent and two other unrelated parties[12] on November 9, 2012, also alleging fraud; and a review of the Board's records reveals that petitioner NSM has filed twenty-nine distinct oppositions, cancellations, and requests for extension of time to oppose since 2008.[13] By

---

[11] In the '441 proceeding, petitioner NSM was allowed to replead its petition to cancel following the Board's grant of respondent's motion to dismiss the original petition.

[12] The petition for cancellation filed in the '441 proceeding, *see supra* n.9, also identified GSM (Operations) Pty. Ltd, and its Registration No. 3294466 for the mark BILLABONG; and Destineer Publishing Corp., and its Registration No. 3664725 for the mark STOKED.

[13] This includes instituting twenty oppositions and cancellations and nine additional distinct requests for extension of time to oppose nine other applications.

those filings, petitioner NSM has initiated nine cancellations or oppositions

against marks that bear absolutely no resemblance to its asserted marks;[14]

---

[14] Cancellation No. 92056441 (HUCK marks v. XBOX 360 (Microsoft, Inc.) – petition withdrawn after Board found that petitioner failed to sufficiently plead its standing in the matter; the Board noted its "skepticism regarding the bases for petitioner's standing and fraud claim," and warned petitioner that it should only bring supportable claims under Trademark Rule 11.18 and Fed. R. Civ. P. 11(b)); Cancellation No. 92056436 (HUCK marks v. STOKED (Destineer Publishing) – petition dismissed with prejudice after petitioner withdrew petition without consent after an answer had been filed, following respondent's motion to dismiss alleging that petitioner failed to sufficiently plead its standing or its claim of fraud); Cancellation No. 92056451 (HUCK marks v. BILLABONG (GSM) – petition dismissed with prejudice after respondent's motion to dismiss, alleging that petitioner lacked standing and failed to sufficiently plead its fraud claim, was granted as conceded); Cancellation No. 92054840 (HUCK marks v. DEPARTMENT OF GOODS (Backcountry.com) – petition dismissed with prejudice after respondent's motion for judgment on the pleadings, alleging that petitioner lacked standing and that the petition failed to state a claim upon which relief could be granted, was granted as conceded); Opposition No. 91191675 (HUCK DOLL v. REALCYCLIST.COM (Backcountry.com) – opposer (NSM) withdrew its notice of opposition after applicant filed a motion to dismiss, alleging that opposer lacked standing and that "this opposition is the latest in a string of objectively baseless proceedings that Opposer has filed."); Cancellation No. 92051104 (HUCK marks v. MOUNTAIN HARD WEAR (Mountain Hardwear, Inc.) – petitioner withdrew the petition after the Board granted respondent's motion to dismiss, finding that petitioner failed to sufficiently plead its standing and noting that petitioner's belief of damage was "based entirely upon respondent's asserted use of the term HUCKSTER on backpacks, which is immaterial to this proceeding involving a registration for an entirely different mark," but granting petitioner leave to amend its petition); Cancellation No. 92050960 (HUCK marks v. S SPIN MASTER and design (Spin Master Ltd.) – respondent's motion to dismiss was granted with prejudice, finding that "[t]here is nothing in the instant petition to cancel which indicates a reasonable belief in damage or an interest of petitioner in cancelling respondent's mark SPINMASTER and design."); and Cancellation No. 92050732 (HUCK v. PROSPIRIT (Target Brands, Inc.) – petition for cancellation withdrawn prior to the Board issuing a decision on respondent's motion to dismiss alleging that petitioner lacked standing and failed to state a claim upon which relief could be granted).

In addition, petitioner brought a similar action against a seemingly dissimilar mark, but withdrew the petition before any action had been taken. Cancellation No. 92051067 (HUCK DOLL and FRESH TRAX (cancelled) v. BACKCOUNTRY.COM (Backcountry.com) – petition withdrawn prior to responsive pleading or motion).

and petitioner NSM has filed requests for extensions of time to oppose the registration of six other marks that also do not appear to resemble petitioners' HUCK marks.[15] In fact, even where the marks targeted by petitioner NSM arguably bore at least some resemblance to asserted marks, petitioner's litigation strategy remained dubious.[16]

As petitioner NSM has previously been advised (*see supra* n.14), and petitioners are again admonished, under USPTO Rule 11.18(b):

. . .

b) By presenting to the Office … any paper, the party presenting such paper, whether a practitioner or non-practitioner, is certifying that—
. . .
2) To the best of the party's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

i) The paper is not being presented for any improper purpose, *such as to harass someone* or to *cause unnecessary delay or needless increase in the cost of any proceeding* before the Office;

ii) The other *legal contentions therein are warranted by existing law* or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law (emphasis added).

---

[15] Application Serial Nos. 85526118 (INTEL INSIDE and design), 85976215 (G+ and design), 77912047 (BREACH), 77667725 (BROCIETY), 77668428 (BROCIETY and design), and 77678120 (REALCYCLIST.COM and design).

[16] *See, e.g.* Cancellation No. 92056558 (HUCK marks v. HUK LAB FLY THREADS FOR THE HUCK LIFESTYLE (Jay Weldon Harbour) – petition dismissed when petitioner failed to amend its claim after Board denied petitioner's motion for summary judgment because petitioner failed to sufficiently plead its fraud claim, but allowed petitioner time to amend its claim; petitioner's request for reconsideration was subsequently denied).

*See also* Fed. R. Civ. P. 11(b); TBMP § 527.02.

Petitioners assert that the present petition to cancel is different from the petition filed in the '441 proceeding; that in previous proceedings the Board erred in refusing "to acknowledge [petitioner's] interest or standing" in dismissing those proceedings with prejudice and without leave to amend; and that petitioner NSM "has opposed successfully trademark applications and has petitioned successfully to cancel trademark registrations such as this one." Finally, petitioners argue that respondent "may have violated the 'safe harbor' provision of Fed. R. Civ. P. 11(c)(2)."

We note at the outset that respondent's motion for sanctions was filed more than twenty-one days after its service upon petitioners, was presented as a distinct and separate motion, and details petitioners' allegedly offensive filings. Accordingly, the motion satisfies the requirements of the "safe harbor" provision of Fed. R. Civ. P. 11(c)(2), contrary to petitioners' contentions. Therefore, the Board will consider respondent's motion for sanctions on its merits.

In considering sanctions, it is appropriate to consider a party's conduct in other Board proceedings. *See Central Mfg. Inc. v. Third Millennium Tech. Inc.*, 61 USPQ2d 1210, 1214 (TTAB 2001) (in granting sanctions, Board considered previous conduct of opposer, who had been sanctioned in a prior proceeding "for precisely this type of conduct"). Petitioners' pattern of behavior leaves no doubt that the noted proceedings were initiated in bad

faith, and at least with the intent to harass third parties who have lawfully registered their marks, or to unnecessarily delay those seeking to register their marks. Despite being instructed, cautioned, and reprimanded regarding the dubious basis of its asserted standing and the grounds asserted in its previously filed complaints, petitioners have not relented, but indeed have initiated additional proceedings before the Board, advancing similarly meritless complaints against various registrants and applicants.

The formulaic nature of petitioners' approach illustrates abuse of the Board's procedures in its attempt to harass third parties. This approach involves repeated assertions of fraud, alleging a highly similar set of facts to support claims, none actually rising to the level of fraud; and periodic claims under Trademark Act Section 2(a), 15 U.S.C. § 1052(a), for false suggestion of a connection, deceptiveness and immoral or scandalous matter; assertions of a likelihood of confusion under Trademark Act Section 2(d); and claims of dilution under Trademark Act Section 43(c). None of these grounds has been sufficiently pleaded in any of the various proceedings. At the same time, petitioners have alleged ownership of marks which are — with a few exceptions — entirely dissimilar to the marks in the targeted applications or registrations.

As the Board has explained in dismissing petitioner NSM's previous proceedings,[17] a party does not gain standing before the Board by virtue of the mere subjective "belie[f that] a trademark violates rights under Trademark Act 14" and by "pay[ing] the prescribed fee," as petitioner insinuates. Although the standard is low, the belief in damage resulting from registration must be *objectively* reasonable. Petitioners have repeatedly fallen short of that mark in very similar circumstances. On no less than five separate occasions the Board granted motions dismissing petitioner NSM's pleadings based upon its failure to plead either standing or a valid claim under the Trademark Act. Given the early dismissal of petitioner NSM's previous proceedings, we conclude that petitioners could not have reasonably or in good faith believed that the assertion of these same claims in the present proceeding was warranted or that they had standing to bring the claims.

Indeed, petitioners' vexatious conduct unnecessarily disrupts the fair allocation of Board resources. The filing of such frivolous cases requires that the Board sift through each case filed by petitioners, including pages upon pages of unsupported claims that in turn trigger further motion practice to prevent unnecessary litigation from going forward. These are resources and time better devoted to more meritorious matters. The Board has an interest

---

[17] *See, e.g.*, Board's January 30, 2014 order, Canc. No. 92056441, pp.6-7; Board's July 29, 2009 order, Canc. No. 92051104, p.6; Board's September 11, 2009 order, Canc. No. 92050960, pp.3-4.

in seeing that its processes are not abused for purposes of harassment and delay.

When conduct sanctionable under Rule 11 of the Federal Rules of Civil Procedure or Board rules is found, the Board has the authority to enter appropriate sanctions, including the entry of judgment. *See* TBMP §§ 527.02 and 527.03 and authorities cited therein. *See also* Fed. R. Civ. P. 11; and *Giant Food, Inc. v. Standard Terry Mills, Inc.*, 231 USPQ 626 (TTAB 1986). Further, it is clear that Rule 11 does not displace the Board's inherent authority to sanction bad-faith litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). *See also United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (*citing Chambers*, 501 U.S. at 49 (A court's inherent power to sanction those before it "stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of the cases.")). Although the Board is not a court established under Article III of the Constitution, the Board nonetheless possesses the inherent authority to control the disposition of cases on its docket, which necessarily includes the inherent power to enter sanctions. *See In re Bailey*, 182 F.3d 860, 864-65 (Fed. Cir. 1999) (non-Article III tribunals have inherent power to control proceedings and enter sanctions); *Opticians Ass'n of Am. v. Indep. Opticians of Am. Inc.*, 734 F. Supp. 1171, 14 USPQ2d 2021, 2029 (D.N.J. 1990) (the Board has inherent authority to schedule

disposition of cases on its docket); *Carrini Inc. v. Carla Carini S.R.L.*, 57 USPQ2d 1067, 1071-72 (TTAB 2000).

One of the predominant purposes for entering a Rule 11 sanction is to deter further wrongdoing. *Central Mfg.*, 61 USPQ2d at 1213. The Board has discretion to tailor sanctions appropriate to the violations and may consider any measure designed to serve this purpose. *Id.*; *see also Elec. Indus. Ass'n v. Potega*, 50 USPQ2d 1775, 1778 (TTAB 1999). These principles are equally applicable when the Board employs its inherent authority to sanction bad-faith conduct.

Under Rule 11 and the Board's inherent authority to sanction, it is clear that any sanction short of judgment would be futile and unfair to respondent and any other party targeted by petitioners. Accordingly, this case is **DISMISSED** with prejudice as a sanction for petitioners' conduct in this case.

Moreover, so as to tailor the sanctions to the type of conduct evidenced in this case and others filed by petitioners, petitioners are hereby ordered to show cause why their pattern and practice of filing frivolous petitions, and their sanctionable conduct in this proceeding do not constitute a bad faith abuse of litigation opportunities such that the Board should not impose the following additional sanctions on petitioners NSM Resources, Huck Doll LLC, their shared principal Zane Murdock, and any entity owned or controlled by Mr. Murdock:

1. Any future notices of opposition or petitions to cancel filed by petitioner NSM Resources, Huck Doll LLC, their shared principal, Zane Murdock, any entity owned or controlled by Mr. Murdock, or any counsel acting on behalf of the same must reference this proceeding and this order in the body of any such complaint;

2. Petitioners NSM Resources, Huck Doll LLC, their shared principal, Zane Murdock, any entity owned or controlled by Mr. Murdock, or any counsel acting on behalf of the same must serve a copy of this decision on any party against which any of them files an extension of time to oppose, a notice of opposition, or a petition to cancel;

3. Petitioners, their principal, any entity owned or controlled by Mr. Murdock, or counsel acting on behalf of the same are permanently prohibited from filing notices of oppositions or petitions to cancel where the responding party's marks bear no resemblance to petitioners' HUCK marks (or other mark(s) for which petitioners claim ownership) and where the legal basis for the action is a claim of fraud;

4. Petitioners NSM Resources, Huck Doll LLC, their principal Mr. Murdock, any entity owned or controlled by Mr. Murdock, or counsel acting on behalf of the same are prohibited from filing any requests for extension of time to oppose for a period of ONE YEAR;

5. Petitioners, their principal, and any entity owned or controlled by Mr. Murdock are permanently prohibited from appearing before the Board on their own behalf and must retain outside counsel, specifically, an attorney qualified to practice before the USPTO, for any future filings with the Board;

6. After the one year period noted in No. 4 above, and including the provisions of No. 2, with respect to any future requests for extension of time to oppose filed on behalf of petitioners, their principal, or any entity owned or controlled by Mr. Murdock, the attorney representing the same is required to file with the request a written statement attesting that the plaintiff(s) or their principal, as the case may be, (1) understands that proceedings before the Board are based on the mark and the goods or services as presented in the challenged application or registration; and (2) understands that plaintiff(s)' or their principal's alleged standing is based upon a reasonable belief of damage by virtue of the mark actually present in an applicant's or registrant's application or registration being used on or in connection with the goods or services actually claimed in the challenged application or registration. Moreover, plaintiff(s) or their counsel must confirm under oath that the signor of the request has read and understands Fed. R. Civ. P. 11;[18] and

---

[18] Parties filing extensions of time to oppose must meet the same standing requirement as is required of an opposer as explained above. In other words, an

7. In light of the requirements set out above, and in order to allow the Board to thoroughly review any future filings for compliance with this order, any attorney representing petitioners, their principal, or any entity owned or controlled by Mr. Murdock is prohibited from filing via the Electronic System for Trademark Trials and Appeals ("ESTTA") (except in the case of extensions of time to oppose or notices of oppositions against applications filed under the Madrid Protocol[19] and otherwise contemplated by the terms of this decision) any future requests for extension of time to oppose, notices of opposition, or petitions for cancellation, inasmuch as electronic submission of these forms is processed/instituted automatically, to improve the efficiency of Board operations. Should petitioners, their principal, any entity owned or controlled by Mr. Murdock, or any attorney representing the same attempt to subvert any of these requirements and make any prohibited filing through ESTTA, the

---

extension of time to oppose may only be filed by a "person who believes that he would be damaged by the registration of a mark." Trademark Act § 13. Because of the limited nature of extensions, our rules do not require a "pleading" of standing with an extension of time to oppose. Nonetheless, applicants may challenge extension requests and the Board may examine an extension request to determine whether it is meritorious. Although it is understood that a "reasonable" belief in damage may be somewhat tentative prior to the filing of a notice of opposition, it is obvious that such a belief would not have been reasonable in a case such as this one or most of the others we have mentioned.

[19] Use of ESTTA is mandatory for the filing of extensions of time to oppose applications filed under the Madrid Protocol, Trademark Act Section 66(a), 15 U.S.C. § 1141(a), and notices of opposition against such applications. Nonetheless, as previously stated, the Board may in any event *sua sponte* dismiss any insufficiently-pleaded opposition.

resulting proceeding will be immediately dismissed without consideration, and further sanctions may be considered against the plaintiff(s), its principal and/or the filing attorney.

"The Supreme Court and numerous courts of appeals have recognized that courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *Central Mfg.*, 61 USPQ2d at 1215 (*quoting In re Martin-Trigona*, 9 F.3d 226, 228 (2d Cir. 1993)). That is the case here.

Accordingly, respondent's motion for sanctions is **GRANTED.** Petitioners are allowed twenty (20) days to respond to the order to show cause why the additional sanctions outlined above should not be entered.

**Decision**: The petition for cancellation is **DISMISSED with prejudice**. Petitioners are **ORDERED** to show cause within twenty (20) days of the mailing date of this decision why the additional sanctions outlined above should not be entered. In absence of a response, the additional sanctions outlined above will be entered against petitioners NSM Resources, Huck Doll LLC, and their principal Mr. Murdock, and will apply additionally to any other companies owned or controlled by Mr. Murdock now or in the future.